[Civ. No. 17644. First Dist., Div. One. May 17, 1957.]

JACOB A. JESSUP, Petitioner, v. SUPERIOR COURT OF SANTA CLARA COUNTY et al., Respondents; EARNEST SANDERS, Real Party in Interest.

Campbell, Custer, Warburton & Britton and Alfred B. Britton, Jr., for Petitioner.

No appearance for Respondents.

Boccardo, Blum, Lull and Niland & Teerlink and Edward J. Niland for Real Party in Interest.

BRAY, J.—The Superior Court of Santa Clara County issued a writ of mandate to compel petitioner, who is the Chief of the Department of Public Safety of the city of Sunnyvale, to permit Earnest Sanders (the real party in interest) to inspect certain records. Petitioner declined to do so. Thereafter petitioner was found in contempt of court for failing to comply with the court's order. Sentencing, however, was deferred until after the determination of this "Petition for Writ of Prohibition, Mandate, or Other Appropriate Writ."[*][†]

QUESTION PRESENTED

Are reports of investigations of accidents involving personal injuries or death, and possible municipal liability, of the Department of Public Safety and of the Department of Parks and Recreation of a municipality, privileged? Corollary to the question is the following: As to those reports, does section 1881, subdivisions 2 and 5, Code of Civil Procedure (attorney and client privilege, and confidential communications to a public officer) control over section 1892, Code of Civil Procedure (right to inspect public writings), and section 1227, Government Code (public records open for inspection)?

FACTS

The city of Sunnyvale operates and maintains a swimming pool. The 8-year-old son of Sanders was drowned therein. Sanders desires to present to the city a claim for his death. He demanded of Chief Jessup and of Director Menagh the records and reports made by the agents of each department in the course of their investigation of the drowning. His demand was denied. He claims that therefore he is unable to determine whether he has a meritorious claim against the city.

---

[*]In the superior court proceeding Frank S. Menagh, as Director of the Department of Public Safety, was a respondent. As he had resigned as such director, the proceeding against him was abandoned.

[†]As the order of the superior court is not appealable, prohibition is the proper form of remedy to be sought. (*Holm* v. *Superior Court*, 42 Cal.2d 500, 505 [267 P.2d 1025, 268 P.2d 722].)

At the hearing, Chief Jessup testified that as a matter of routine of his department an investigation is made by the officer of the department in every accident in the city involving the death of a human being. The records and reports of such accidents are kept indefinitely in the department. Such investigation was made of the drowning of the Sanders boy. It included the questioning of a number of people who are not employed by the city as well as of city employees. His department is interested in the prevention of accidents involving human injury and death. There seemed to be some confusion in the chief's testimony as he was talking generally about investigations of all serious accidents in the city, including traffic accidents and other types in which the city itself would not be involved. The reports in this matter were delivered either to the city manager or the city attorney. When an accident occurs involving city property or employees the investigation is made for the purpose of advising the city attorney or other defense attorneys employed by the city, for use as a defense to a future lawsuit.

Director Menagh testified that in the event of the death of a human being in any facility under his department's control (the swimming pool was) reports are made to him and go into the files of his office. On serious accidents the reports are turned over to the city manager. In this matter the city manager requested them. The director is interested in seeing that the facilities are operated in a safe manner and when anything goes wrong the director wants to know about it. If the reports indicate something which caused the accident needs to be corrected, the director will take the action necessary to make the correction. The director is primarily concerned with the safe and efficient operation of his department. One of the purposes of making the investigation is to insure safety in the future; another purpose is to receive all the facts and information of the accident and turn those facts over to the city manager.

The city manager testified that both Jessup and Menagh and their departments are under his supervision; that one of his functions is to issue general orders of policy concerning accidents that might involve the city. The department head concerned with a particular accident that may involve the city's insurance carrier as a matter of standard practice is to report his special investigation to the city manager. In the past these reports were turned over by the city manager to the attorney for the city's insurance carrier, but now, as the

city attorney is a full time employee, they are turned over to him. The purpose of these reports is to protect the city from liability and to enable the city to get more favorable bids on municipal liability insurance. Probably failure to make these investigations would make insurance difficult to get. One of the purposes in gathering the material in the reports is for defense of possible future litigation. The Sanders reports were reviewed by the city manager and then immediately turned over to the city attorney upon receipt. One of the reasons for the reports is to determine methods by which the recurrence of similar accidents can be prevented. The welfare of the people of Sunnyvale is concerned with both reasons for the report. The primary purpose is for use in possible litigation. There are records of the Public Safety Department concerning this accident which are open to the public and which would disclose any possible cause of the accident. The reason the investigation is made by the members of the departments is that the city attorney does not have any staff for investigative purposes. There is an altogether different procedure for handling safety than these special investigation reports. These reports would not be available to the safety council staff conference, which considers any matters which might have caused the drowning. The report would not be available to the Public Safety Department which created it. It has an official report which is open to the public. That department makes two separate investigations, one for their official report and one for a special report to the city manager.

Chief Jessup testified that he did not know that his department made two separate investigations; that the records and reports made by his department are kept there unless called for by the city manager.

## WHICH STATUTE CONTROLS?

Section 1892, Code of Civil Procedure, provides: "Every citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute."

Section 1227, Government Code, provides: "The public records and other matters in the office of any officer, except as otherwise provided, are at all times during office hours open to inspection of any citizen of the State."

The term "public officer" includes all officers who fill "offices created by or under the authority of charters or laws for the government of counties and cities." (Gov. Code,

§ 1001.) ■ "In order that an entry or record of the official acts of a public officer shall be a public record it is not necessary that such record be expressly required by law to be kept, but it is sufficient if it be necessary or convenient to the discharge of his official duty. 'Any record required by law to be kept by an officer, or which he keeps as necessary or convenient to the discharge of his official duty, is a public record.' (Cyclopedic Law Dictionary, p. 776.)" (*People* v. *Tomalty,* 14 Cal.App. 224, 231 [111 P. 513].)

■ We are of the opinion that these reports are "other matters" referred to in section 1227, Government Code. (See *Coldwell* v. *Board of Public Works,* 187 Cal. 510 [202 P. 879].) They would be open to inspection by a citizen were it not that they come within the exceptions "except as otherwise expressly provided by statute" in section 1892, Code of Civil Procedure, and "except as otherwise provided" in section 1227, Government Code. The "otherwise expressly provided" is section 1881, Code of Civil Procedure, subdivision 2: "An attorney can not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment; nor can an attorney's secretary, stenographer, or clerk be examined, without the consent of his employer, concerning any fact the knowledge of which has been acquired in such capacity;" and subdivision 5: "A public officer can not be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure."

■ That investigation reports made for the use of attorneys in the defense of possible litigation are "communications" under subdivision 2 is well settled. (See *New York Cas. Co.* v. *Superior Court,* 30 Cal.App.2d 130, 132 [85 P.2d 965].) Nor does the fact that these reports can be and are used additionally for accident prevention purposes take away from their confidential aspect while they are being held for defense purposes. ■ The necessity of their being held privileged until the possibility of litigation has ceased, or litigation which ensued has terminated, is more necessary to the public welfare than the matter of leaving them open for citizen inspection. This case illustrates that fact. Here Sanders is not desirous of seeing these reports as a citizen primarily interested in protection of the public; he is desirous of seeing them in the hope that he may gain some advantage therefrom in his contemplated suit against the city, making

disclosure a possible disadvantage to the city. Thus the public welfare requires that inspection be postponed until disclosure will no longer be of disadvantage to the city.*

 Subdivision 5† uses the language "communications made to . . . [a public officer] in official confidence." This does not mean, as respondents contend, that where officers interview witnesses the statements of such witnesses and the officers' reports thereof, only come within this subdivision if the witnesses expressly request that their statement be held in confidence. Communications are made to an officer in official confidence when the investigation is of such a type that disclosure of the investigation would cause the public interest to suffer. An apt illustration of this situation is the investigation of a crime by police officers. (See *Runyon* v. *Board of Prison Terms & Paroles,* 26 Cal.App.2d 183, 185 [79 P.2d 101]; 23 R.C.L. p. 161; *People* v. *Pearson,* 111 Cal. App.2d 9, 18 [244 P.2d 35].) It is not only where a witness requests that his statement be kept in confidence, but in all cases of crime investigation that the record and reports are privileged.

*Holm* v. *Superior Court, supra,* 42 Cal.2d 500, has determined in effect, that the privilege under section 1881, subdivision 2, controls in a situation of this kind. There one Bell sued the city and county of San Francisco and one of its employees for personal injuries alleged to have been received in the negligent operation of the city's municipal railway. The plaintiff obtained a court order for the inspection of her own signed statement given to the railway's claims investigator, written reports by the employee as to the facts of the accident, and photographs taken by the city's agents at the scene following the accident. These records after being obtained were kept in confidence in the city attorney's possession. The trial court ordered these to be produced. Except as to the plaintiff's statement, the Supreme Court reversed, holding that the documents were privileged communications between client and attorney. The plaintiff claimed that as the documents were recorded and preserved in the regular course of the business of the city in the operation of the municipal railway they could not be privileged. A

---

*Of course, Sanders' personal interest would not deprive him of the right to inspect the records if they are not privileged. (*Harrison* v. *Powers,* 19 Cal.App. 762 [127 P. 818].)

†Although this subdivision has been in the Code of Civil Procedure since 1872, no direct judicial interpretation of it has been made.

similar contention is made here, namely, that the fact that these reports were made as routine investigation destroyed their privilege. ''But there is no valid basis for a distinction between a communication created for transmittal to an attorney to prepare for threatened litigation following particular accidents, and a communication prepared for an identical purpose under standing rules in the case of all accidents involving personal or property injury. Because the scope of the operations of the defendant city's municipal railway is such as to require communications of this nature as a routine matter, it cannot be said that the attorney-client privilege did not attach.

''In any action for damages such as the pending one it is of considerable importance to obtain all information available at the scene of the accident in order to safeguard the rights of the party likely to be charged with negligence. It is because of this fact that diligence is required in behalf of such party to avoid or prepare for litigation. In view of the imminent possibility that the city would be faced with a claim involving substantial liability for personal injuries far exceeding financial considerations in any other respect, it is unreasonable and unrealistic to say that the communication of the documentary information to the attorneys for use in their professional capacity was not foremost and predominately in the minds of those securing and transmitting the same.'' (Pp. 508-509.)

There can be no question under the evidence in this case that the dominant purpose of the investigation in death cases resulting from use of the city's property or where liability on the part of the city may possibly be charged, is for use of the city attorney for defense purposes, even though they may also be used for study in accident prevention. As said in *Holm* v. *Superior Court, supra,* at page 507: ''The privilege attaches where the communication is made in confidence pursuant to a client-attorney relationship with respect to the particular matter. (*McKnew* v. *Superior Court,* 23 Cal.2d 58, 65-66 [142 P.2d 1].) Thus there would seem to be no privilege in a communication which is not made to or for further communication to an attorney, although the communication might have some connection with possible liability in the future, such as reports submitted in the regular course of business for study in accident prevention. Nor does the privilege attach to a communication not intended to be of a

confidential nature. (*City & County of San Francisco* v. *Superior Court, supra*, 37 Cal.2d 227, 234-235 [231 P.2d 26, 25 A.L.R.2d 1418]; *McKnew* v. *Superior Court, supra*, 23 Cal.2d 58, 66.) To make the communication privileged the dominant purpose must be for transmittal to an attorney 'in the course of professional employment.' (Code Civ. Proc., § 1881, subd. (2) . . .)'' The Holm case holds that what is the dominant purpose is for the trial court in the first instance. ''Where it is clear that the communication has but a single purpose, there is little difficulty in concluding that the privilege should be applied or withheld accordingly. If it appears that the communication is to serve a dual purpose, one for transmittal to an attorney 'in the course of professional employment' and one not related to that purpose, the question presented to the trial court is as to which purpose predominates. The question then is whether the conclusion of the trial court on the facts is correct or has resulted in an abuse of discretion.'' (P. 507.)

What was said in the Holm case applies to the documents in our case. ''As to the reports and photographs it is clear that from their character and content they fall within the privilege. Both originated with agents of the city and it is undisputed that they were forwarded in confidence to the defendants' attorneys for use in possible litigation. . . . It follows that where the communication is between corporate employees and is embodied in reports or photographic evidence for the purpose of redelivery to a corporate attorney the privilege attaches if the reports and photographs were created as a means of communicating confidential information to the attorney.'' (P. 508.)

Again applying language of the Holm case to our situation, ''The court did not make specific findings of fact upon which its order for the production of the documents was based. However, in view of the undisputed evidence both as to the intended purpose and the actual practice followed any determination which would not accord greater importance to the purpose of communications to the attorneys in their professional capacities than to any other purpose would be an abuse of discretion. The attorney-client privilege is an important element in the effectiveness with which the counselor-at-law is to advise his client and safeguard the latter's interests. Where, as here, the right to the privilege is clearly established it should not be cast aside. The fact that the information contained in the communications might also be

used for incidental purposes not entitled to the privilege is unimportant." (P. 509.)

Except upon the question that the reports are "other matters" under section 1227, Government Code, *Coldwell* v. *Board of Public Works, supra,* 187 Cal. 510, is not applicable here. There it was held that plans, specifications, reports, estimates and data concerning the Hetch Hetchy project prepared by the city engineer and Board of Public Works and turned over to the city attorney, while not "public records" were "other matters" which were of such great public interest as to require their inspection to be open to the public. Some of the data, the reviewing court apparently treated as privileged, originally, but because the city engineer had permitted the Civic League of Improvement Clubs to inspect them fully, it held that the data had lost its privilege.

There was no evidence in this case from which the trial court could have determined that the dominant cause of the investigation was anything but preparation for defense of possible litigation.

Let the writ issue compelling said superior court to vacate the writ of mandate issued by it and the order finding petitioner in contempt thereof, and commanding said court to refrain from further proceedings in contempt.

Peters, P. J., and Wood (Fred B.) J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied July 12, 1957, with Kaufman, J., and Dooling, J., sitting pro tem. for Traynor, J., and Schauer, J. Gibson, C. J., and Carter, J., were of the opinion that the petition should be granted.