[Crim. No. 43460. Second Dist., Div. Two. June 7, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH ERNEST GALANTE, Defendant and Appellant.

## COUNSEL

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Howard J. Schwab and Gelacio L. Bayani, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GATES, J.**—Defendant Joseph Galante was convicted of possessing cocaine for sale (Health & Saf. Code, § 11351) after he had agreed to a submission of the cause upon the transcript of his preliminary hearing in a fashion that was tantamount to a plea of guilty.[1] He appeals contending: "I. The trial court erred when it failed to order disclosure of the identity of the informant. II. Appellant was denied due process when the court failed to obtain immunity for a defense witness."

The determinative facts have never been contested. On January 22, 1981, a search warrant was executed at appellant's residence and a large quantity of co-

[1] In addition to the usual admonitions mandated by *In re Mosley* (1970) 1 Cal.3d 913 [83 Cal.Rptr. 809, 464 P.2d 473], the following explicit exchange occurred: "THE COURT: You also have a right not to incriminate yourself. If you submit to having the question of your guilt or innocence submitted on the transcript of the preliminary hearing in this case, *I will be finding you guilty* of selling cocaine and possessing cocaine for sale. [¶] Do you understand that? [¶] MR. SCHONS [Deputy Attorney General]: Just for possession for sale. [¶] THE COURT: Just for possession for sale. That's count II? [¶] MR. SCHONS: That is the one and only count, Your Honor. [¶] THE COURT: All right. *You will be convicting yourself of possession of cocaine for sale.* [¶] *Do you understand that?* [¶] THE DEFENDANT: Yes." (Italics added.)

caine was recovered from a locked file cabinet located in the master bedroom occupied by appellant. In addition appellant was found to have the key to this cabinet in the pocket of his trousers when he was arrested.

At appellant's preliminary examination, his counsel, apparently not feeling constrained by any consideration for reality, posited various mutually inconsistent hypotheses that might, theoretically, explain how a person could conceivably find himself in appellant's position without necessarily being guilty of the offense charged. It was never once suggested, however, that there was a basis in fact for any of these musings nor that appellant himself claimed that any of them were true.

By way of example, in attempting to show that the identity of the informant might still be of value to him despite the fact appellant had the key to the locked cabinet in his possession when arrested, his counsel asserted: "The fact that a man has a key to a particular lock box in a place that is allegedly his bedroom, does not necessarily tie him to the cocaine. It may have been his son who handed it to him. He may have found it around the house. It may not have been found on his possession."

Obviously all of these self-contradictory "may have beens" could not possibly be true, though they all could be, and apparently were, false. Furthermore, appellant himself necessarily knew to a certainty if any of them had any basis in fact and could so have apprised his counsel and the court at any time. Every criminal trial is, or at least it ought to be, a serious and dedicated search for the truth; a societal proceeding designed to exonerate the innocent and to firmly establish the guilt of the malefactor. Neither goal would be subject to attainment if the action were converted into a game of "blindman's buff" wherein the presiding judicial officer is forced to make his rulings in the dark. Of course, if a defendant seriously asserting his innocence should fear that some such factual disclosure would aid the prosecution in the presentation of its case, he may always reveal it to the court, *in camera*.

In sum, the present motion was but another of those unfortunately common instances wherein the defense confuses the fact that while it may sometimes be necessary to "speculate" concerning the knowledge possessed by an informant (see *People* v. *Allen* (1980) 101 Cal.App.3d 285, 288 [161 Cal.Rptr. 568]; *Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412, 420 [112 Cal.Rptr. 485]), it is never necessary for a defendant to "speculate" concerning his own role in the scenario, something which is, of necessity, already fully known to him. (See *People* v. *Hardeman* (1982) 137 Cal.App.3d 823, 831 et seq. [187 Cal.Rptr. 296]; *People* v. *Green* (1981) 117 Cal.App.3d 199, 208 [172 Cal.Rptr. 582]; *People* v. *Frohner* (1976) 65 Cal.App.3d 94, 104 [135 Cal.Rptr. 153]; *People* v. *Long* (1974) 42 Cal.App.3d 751, 755 [117 Cal.Rptr.

200]; *People* v. *Acuna* (1973) 35 Cal.App.3d 987, 992 [111 Cal.Rptr. 878]; *People* v. *McCoy* (1970) 13 Cal.App.3d 6, 12 [115 Cal.Rptr. 559]; *People* v. *Sewell* (1970) 3 Cal.App.3d 1035, 1039 [83 Cal.Rptr. 895]; *People* v. *Martin* (1969) 2 Cal.App.3d 121, 127 [82 Cal.Rptr. 414]; but see *People* v. *Tolliver* (1975) 53 Cal.App.3d 1036, 1048 [125 Cal.Rptr. 905].)

Nonetheless, although appellant's showing in support of his disclosure motion was insufficient, the magistrate presiding at appellant's preliminary examination did conduct an *in camera* hearing. This officer, and the superior court judge who later reconsidered the question, each properly concluded that the informant's testimony could not serve to exonerate appellant. That is to say, the examination of the informant established that although, as had theretofore been revealed by the affidavit supporting the search warrant issued herein, he/she had made earlier purchases of cocaine on the premises, he/she had no knowledge respecting the subject offense. In truth, if this witness had been made available, his/her evidence would have but served to increase the charge against appellant from a single count of possession to multiple counts of sale.

The most startling aspect of this *in camera* hearing, however, was the decision of the magistrate to allow defense counsel to participate therein telephonically. Such a procedure was, of course, extraordinarily dangerous and one that we trust will never again be repeated. In addition, the questioning of the informant by the prosecution was needlessly specific and while we have no reason to doubt the verity of defense counsel's vows of silence in this instance, such disregard for the life and safety of those who cooperate with the authorities cannot be condoned.[2]

■ Although it was clear from the informant's statements that he/she had absolutely no information concerning the particular contraband contained in appellant's locked cabinet on the day the search warrant was executed, nonetheless appellant urges that his/her identity should have been ordered disclosed, thereby forcing the People to dismiss this action, because apparently the narcotics trafficking at appellant's residence constituted a family enterprise. However, the fact that appellant's past possessions of contraband may not always have been exclusive did not justify the requested order. (*People* v. *Green, supra,* 117 Cal.App.3d 199, 208; *People* v. *Hambarian* (1973) 31 Cal.App.3d 643, 659 [107 Cal.Rptr. 878]; cf. also *People* v. *Thompson* (1979) 89 Cal.App.3d 425, 433 [152 Cal.Rptr. 495].)

In addition, of course, there was nothing to preclude appellant from subpoenaing all persons to whom either he or his son had sold cocaine in the preceding

---

[2]Attorneys, other than counsel appointed here, represented appellant and a codefendant below. The charge against the codefendant, who was not appellant's son and who has not appealed, was based upon an entirely distinct quantity of contraband which the codefendant was

days, an action which necessarily would have produced the informant, among others, if appellant had actually believed the testimony of such persons might have proven helpful to him. (*People* v. *Hardeman, supra,* 137 Cal.App.3d p. 829.)

■ Appellant's final contention is premised upon the fact that the People declined to ask the court to grant his son immunity from prosecution under Penal Code section 1324. Appellant at one point asserted that if his son were to be spared all threat of punishment he, the son, would be happy to claim that despite all appearances to the contrary, he, the son, was the true "legal" owner and possessor of all the contraband located in the locked cabinet in appellant's bedroom. We do not doubt that under such circumstances the son would have so asserted. We are equally confident that if their situations had been reversed, appellant, if similarly sheltered, would have been delighted to reciprocate. It is doubtless for this very reason that all decisions respecting grants of immunity ordinarily must lie with the prosecution.

In any event, even if we could perceive any merit in appellant's arguments in this regard, which we do not, this exact contention has been repeatedly rejected by our Supreme Court. (*In re Weber* (1974) 11 Cal.3d 703, 720 [114 Cal.Rptr. 429, 523 P.2d 229].) It is not the province of an intermediate appellate court to "overrule" such determinations. (*People* v. *Triggs* (1973) 8 Cal.3d 884, 891 [106 Cal.Rptr. 408, 506 P.2d 232].)

The judgment is affirmed.

Compton, Acting P. J., and Beach, J., concurred.

---

observed to throw from a moving car when it was being stopped as part of the execution of the subject search warrant. Our record contains no suggestion how the informant could possibly have been of aid to this party.