[No. B037686. Second Dist., Div. Seven. Oct. 18, 1989.]

THE PEOPLE, Plaintiff and Appellant, v.
STUART CAREL OTTE, Defendant and Respondent.

1524

1526

COUNSEL

Ira Reiner, District Attorney, Maurice H. Oppenheim and Sterling S. Suga, Deputy District Attorneys, for Plaintiff and Appellant.

Tyson & Ipswitch, Richard P. B. Tyson, Torres & Brenner and Anita Susan Brenner for Defendant and Respondent.

OPINION

LILLIE, P. J.—Defendant was charged by information with possession of marijuana for sale, and sale or transportation of marijuana. (Health & Saf. Code, §§ 11359 & 11360, subd. (a).) His motion to discover the identity of an informant who had supplied information relied upon by the police in obtaining a search warrant for defendant's residence and vehicle, was granted; when the People refused to disclose the identity of the informant, the court dismissed the information. The People appeal from the order of dismissal. (Pen. Code, § 1238, subd. (a)(8).)

The trial court determined as a matter of law that the informant did not give information to the police "in confidence" within the meaning of Evidence Code section 1041, subdivision (b)(1). At the time the informant provided to police the information about defendant, the informant had recently been in police custody as a suspect in a narcotics case and had been released or released without charges being filed, as a result of providing that information.

The primary appellate issue is whether the criminal suspect who furnished information about defendant did so "in confidence" within the meaning of Evidence Code section 1041, pertaining to the privilege of a public entity to refuse to disclose the identity of an informant.

## Procedural and Factual Background

After the superior court denied defendant's motion to quash and traverse search warrants and to suppress evidence, defendant filed motion for identification of informant or dismissal of the information, claiming (1) that the informant is not properly a "confidential" informant and (2) that he is a material witness on the issues of possession for sale, mistaken identity, and dominion and control.[1] The motion for disclosure of the informant's identity was submitted on the transcript of the hearing on the motion to quash and traverse supplemented by additional testimony of Deputy Cofield, as well as the court's in camera discussion with Deputy Cofield.[2]

Deputy Cofield testified that prior to November 3, 1987, he met with an informant, who had not before that time given information to the police

---

[1] At the hearing, defense counsel stated that defendant was *not* asserting the informant was a material witness on the issues of possession, dominion and control of the marijuana; rather, defendant was asserting the informant was a material witness on the issue of possession for purpose of sale. At the hearing, defense counsel did not mention the issue of "mistaken identity," and it is difficult to see how defendant's identity can be a disputed issue in this case, where the police are certainly not mistaken about the fact that it was defendant whom they stopped and defendant's car and residence that they searched when they found the marijuana (in the amount of approximately one pound) which was the basis of the charges filed against defendant.

[2] In granting defendant's motion to disclose the informant's identity, the court expressly stated that its decision was based on what happened in open court and brought out by defense counsel in cross-examination of Deputy Cofield; the court did not base its decision on anything revealed in the in camera discussion with Deputy Cofield. Thus, it is clear from this record that the court based its determination that the information was not given "in confidence" on the fact that the informant had been a suspect in custody at the time. It is also clear from the record that the trial court addressed the issue of confidentiality as a preliminary first step which it determined the prosecution never surmounted, so the court never considered the issue of whether there "is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial." (Evid. Code, § 1042, subd. (d).) In light of the trial court's statement of the basis of its decision, we do not consider ourselves hampered on this appeal by the fact that the sealed record of the in camera discussion is not a part of our record on appeal.

As to the in camera discussion, the court did comment: "Deputy Cofield and I have discussed in chambers in confidence on a sealed record his reasons for not wishing to disclose the identity of the informant and those are good reasons. He is to be commended for stating those reasons and for making his refusal to disclose. However, I have to rule at this time there is insufficient evidence that the information was given in confidence as required by the statute and also after discussing the factual situation with Deputy Cofield there is also insufficient evidence that the informant—that the information will render the informant unusable to law enforcement or that his personal safety is in danger. [¶] So, the information must be disclosed or the District Attorney's office must suffer the sanction."

that had resulted in arrests. The informant told Cofield that a man known only to the informant as "Stuart" was selling marijuana on an "out call" basis whereby one wishing to purchase marijuana calls Stuart on the telephone, orders the desired amount, and arranges to meet Stuart at a prearranged location; Stuart delivers the marijuana in a black two-door 1986 Subaru. The informant also gave Cofield Stuart's telephone number and a detailed physical description of Stuart, and told him that Stuart is a truck driver and is away periodically.

At the time Cofield received the information about defendant from the informant, the informant was not under arrest but had been a suspect in a narcotics investigation, in custody within the previous 48 hours and released without charges being filed as a result of having provided the information. Between the time Cofield spoke to the informant and the time of execution of the search warrant of defendant's residence and car on November 19, 1987, Cofield was not aware of any contact between the informant and the defendant. Cofield further stated that he was claiming the privilege under Evidence Code section 1041; he felt that if the identity of the informant were known, "there is not a question in my mind that his life would be in danger"; and he had some information relating to the safety of the informant, the nature of which would tend to disclose his identity, but which he (the officer) was willing to disclose to the court only in camera.

After the in camera discussion, the court ruled that there was insufficient evidence that the information was given in confidence within the meaning of Evidence Code section 1041, or that the disclosure would render the informant unusable to law enforcement or that his personal safety would be in danger. The prosecutor stated: "Your Honor, I understood that Deputy Cofield was going into chambers to establish the threat to the safety of the informant. I have not attempted thus far to make any kind of a report with respect to the confidentiality of the information. I would like to proceed as far as I can with Detective Cofield in making a record on that in open court." The court responded, "You already have. It was also [made by defense counsel] on cross-examination with respect to the deputy's prior testimony." After the prosecutor offered to have the deputy testify as to his understanding with the informant as to the confidentiality of his identity, the court stated, "In view of the testimony that he has given the informant as a matter of law did not give the information under confidence." After the court ordered disclosure, the court gave Cofield time to discuss the matter with his superiors, and continued the matter; at the subsequent hearing, Cofield told the court that he would refuse to divulge the identity of the informant because he had told the informant that "anything told to me would be taken in confidence," and he feared for the informant's safety.

In making its determination that the information was not furnished in confidence, and thus that the privilege did not apply, the court appeared to rely on language in a case cited by defense counsel, *Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107 [130 Cal.Rptr. 257, 550 P.2d 161], to the effect that "it cannot be maintained that voluntary statements of a criminal suspect to investigating authorities are 'confidential.'" (*Id.*, at p. 124.) Before addressing the issue of confidentiality, it is important to discuss the nature of the privilege in Evidence Code section 1041.

I

PRIVILEGE FOR IDENTITY OF INFORMANT

■ As is evident from the common law history of the privilege of the police to refuse to disclose the identity of an informant, as well as from the language of Evidence Code section 1041, it is primarily the *identity* of the informant which is sought to be kept confidential, and not necessarily the information which he imparts to the police. (See *People* v. *McShann* (1958) 50 Cal.2d 802, 807 [330 P.2d 33].) As occurred in the instant case, the *information* provided by the informant about respondent was indeed disclosed in Deputy Cofield's affidavit in support of the search warrant for respondent's residence and vehicle, but the affidavit did not disclose the *identity* of the informant.

" 'The common-law privilege of nondisclosure [of the identity of an informer] is based on public policy. "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." [Citation.] The informer is thus assured of some protection against reprisals. The use of informers is particularly effective in the enforcement of sumptuary laws such as those directed against gambling, prostitution, or the sale and use of liquor and narcotics. Disclosure of the informer's identity ordinarily destroys his usefulness in obtaining information thereafter.' [Citation.]" (*People* v. *Aguilera* (1976) 61 Cal.App.3d 863, 867 [131 Cal.Rptr. 603].)

Evidence Code section 1041[3] permits a public entity to refuse to disclose the identity of an informer when disclosure "is against the public interest

[3] Evidence Code section 1041 (hereafter section 1041) provides in pertinent part: "(a) Except as provided in this section, a public entity has a privilege to refuse to disclose the identity of a person who has furnished information as provided in subdivision (b) purporting to disclose a violation of a law . . . and to prevent another from disclosing such identity, if the

because there is a necessity for preserving the confidentiality of his identity that outweighs the necessity for disclosure in the interest of justice . . . ." ██ Evidence Code section 1042, subdivision (d), enacted in 1969, provides the courts with a method for determining whether nondisclosure of the informant's identity would deprive the defendant of a fair trial. (*People* v. *Aguilera, supra*, 61 Cal.App.3d at pp. 867-868.) "Under the statute the court is to hold an adversary hearing on the issue of disclosure, and, if requested by the People, an *in camera* hearing from which the defendant and defense counsel will be excluded. The court is not to order disclosure . . . nor dismiss the criminal proceeding 'unless, based upon the evidence presented at the hearing held in the presence of the defendant and his counsel and the evidence presented at the in camera hearing, the court concludes that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial.' " (*Id.*, at p. 868, original italics.)

## II

### THE CONCEPT OF CONFIDENTIALITY IN SECTION 1041

██ Because the informant in the instant case had been a suspect in custody and had apparently traded information about defendant for his release, the trial court concluded that the information was not "furnished in confidence" within the meaning of section 1041, subdivision (b).

In support of this ruling, respondent argues that the phrase "furnished in confidence" in section 1041, subdivision (b) refers to the state of mind of the informant and not the recipient police officer; accordingly, substantial evidence supports the trial court's implied findings that the prosecution failed to meet the burden of showing the informant's intent and that Officer Cofield's promise of confidentiality occurred after the informant gave his information and thus is not pertinent to the informant's state of mind when furnishing the information.

Respondent's interpretation of section 1041 is based primarily on an analogy to cases dealing with the attorney-client privilege, on *Shepherd* v. *Superior Court, supra,* 17 Cal.3d 107, and on the difference in language between section 1041 and Evidence Code section 1040, pertaining to the

privilege is claimed by a person authorized by the public entity to do so and: (2) Disclosure of the identity of the informer is against the public interest because there is a necessity for preserving the confidentiality of his identity that outweighs the necessity for disclosure in the interest of justice . . . . [¶] (b) This section applies only if the information is *furnished in confidence* by the informer to: [¶] (1) A law enforcement officer . . . ." (Italics added.)

privilege for official information.[4] We find none of respondent's arguments persuasive for it is the confidentiality of the identity of the informant that is at issue here, not the confidentiality of the information he gave.

Although subdivision (b) of section 1041 speaks of information furnished "in confidence" by the informant to the police, such language necessarily must be read in conjunction with subdivision (a), which speaks of the public interest in preserving the "confidentiality of [the informant's] identity." Thus, the concept of confidentiality in section 1041 does not refer to the information communicated, unless the contents would disclose or tend to disclose the identity of the informant (*People* v. *McShann, supra*, 50 Cal.2d 802, 807); nor does it depend on the subjective intent or desires of the informant. The confidentiality of which section 1041 speaks is the public interest in the confidentiality of the informant's identity for purposes of effective law enforcement. As explained by the court in *People* v. *Lanfrey* (1988) 204 Cal.App.3d 491 [251 Cal.Rptr. 189], "The requirement of confidence [in section 1041] eliminates from the ambit of the privilege most eyewitnesses who simply provide information to authorities upon being interviewed." (*Id.* at p. 498.) This view is borne out by interpretations of the predecessor statute to section 1041.[5]

Under the predecessor statute to section 1041, "the test is whether the public interest would suffer by the disclosure." (*People* v. *McShann, supra*, 50 Cal.2d at p. 807.) Moreover, the same predecessor statute did not mean "that where officers interview witnesses the statements of such witnesses

---

[4]Section 1040 states in part: "(a) As used in this section, 'official information' means information *acquired in confidence* by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made. . . ." (Italics added.)

Respondent claims that the use of the word "acquired" in section 1040 implies that the subjective intent of the public entity may be determinative for the assertion of that privilege, while the use of the word "furnished" in section 1041 implies that the subjective intent of the informant is determinative for the assertion of the privilege in that section. Although it is true that the statutes use different words, respondent offers no authority for the rather farfetched conclusion that the difference was intended to refer to the state of mind of the person supplying the information to the public entity. What is apparent from the two statutes is that the definition of "official information" in section 1040 includes more sources of information and different methods of its acquisition than that furnished by informants.

[5]"[Former] Section 1881, subdivision 5 of the Code of Civil Procedure encompasses the privilege of nondisclosure of informers: 'A public officer cannot be examined as to communications made to him in official confidence, when the public interest would suffer by the disclosure.' " (*People* v. *McShann, supra*, 50 Cal.2d 802, 807.)

Section 1041, based on former Code of Civil Procedure section 1881, subdivision 5, "is in substantial agreement with its predecessor section as interpreted by the decisions of this court. [Citation.]" (*Honore* v. *Superior Court* (1969) 70 Cal.2d 162, 167 [74 Cal.Rptr. 233, 449 P.2d 169].) "The claim of privilege must thus be examined in the light of these precedents." (*Ibid.*)

and the officers' reports thereof, only come within this subdivision if the witnesses expressly request that their statement be held in confidence. Communications are made to an officer in official confidence when the investigation is of such a type that disclosure of the investigation would cause the public interest to suffer. An apt illustration of this situation is the investigation of a crime by police officers. [Citations.] ■■ It is not only where a witness requests that his statement be kept in confidence, but in all cases of crime investigation that the record and reports are privileged." (*Jessup* v. *Superior Court* (1957) 151 Cal.App.2d 102, 108 [311 P.2d 177].)

■■ Thus, although the cases recognize that preservation of the informer's usefulness and protection of the informer against physical harm are additional purposes for secrecy (see *People* v. *Superior Court* (*Biggs*) (1971) 19 Cal.App.3d 522, 532 [97 Cal.Rptr. 118]), the primary justification for the privilege is the public interest in protecting the flow of information to law enforcement officials. (See *People* v. *Hardeman* (1982) 137 Cal.App.3d 823, 827 [187 Cal.Rptr. 296].) Thus, the test for confidentiality in the instant case is not whether the particular informant demanded that his identity not be disclosed, or was in physical danger, but whether the "investigation is of such a type that disclosure . . . would cause the public interest to suffer." (*Jessup* v. *Superior Court, supra*, 151 Cal.App.2d at p. 108.)

*Shepherd* v. *Superior Court, supra*, 17 Cal.3d 107, does not lend any support to respondent's interpretation of section 1041. *Shepherd* was a civil wrongful death action against police officers who shot plaintiff's son wherein plaintiffs sought discovery of statements made by defendant police officers to the district attorney investigating the shooting. The court in *Shepherd* addressed the issue of whether the statements were subject to the conditional privilege set forth in subdivision (b)(2) of section 1040 of the Evidence Code, pertaining to official information. In its proper context, the language in *Shepherd* that voluntary statements of a criminal suspect to the police are not confidential only means that because the defendant officers were suspects in a criminal investigation, they could reasonably expect that any incriminating statements might be disclosed and used against them during the course of such criminal proceedings, and therefore their information was not "confidential." *Shepherd* did not deal with the issue of the privilege pertaining to the *identity* of an informer, nor is there any indication in that case that the defendant officers were acting as informers when they imparted their information to the district attorney. *Shepherd* is simply not pertinent to the issue in this case.

Moreover, there is nothing in the instant record indicating that the informant was a participant in the offense with which respondent was charged or had communications with respondent which were monitored by the police.

Where an informant was a participant in the crime and made a telephone call to defendant that was recorded by police, it has been held that the communications to the police and the informant's identity were not "in confidence." In *People* v. *McShann, supra,* 50 Cal.2d 802, an informant whose telephone conversations with defendant were recorded, called defendant to make a purchase of heroin; defendant was en route to make such sale when he was arrested. The court stated that "[a]s the originator of the telephone call the informer was a material witness on the issue of possession. The prosecution made him such a witness by introducing evidence of his telephone call to make a purchase of heroin and by playing a recording of the telephone conversation before the jury. [¶] . . . Defendant denied receiving the call. He had no fair opportunity to substantiate his denial and impeach the testimony of the officers without disclosure of the informer's identity." (50 Cal.2d at pp. 809-810.) The court also found that the evidence concerning the telephone call and the identity of the caller did not deal with communications to the police "in confidence" or with the identity of a person making communications "in confidence" within the meaning of the predecessor statute to section 1041. (50 Cal.2d at p. 810.)

While there may be cases, like *McShann,* where a more in-depth inquiry by the trial court as to the propriety of the assertion of the privilege may be warranted, such an inquiry is not indicated on the instant record. Rather, the instant record presents the case of a "mere informer" as opposed to an informer who participates in the crime charged. As explained by the court in *McShann:* "A mere informer has a limited role. 'When such a person is truly an informant he simply points the finger of suspicion toward a person who has violated the law. He puts the wheels in motion which cause the defendant to be suspected and perhaps arrested, but he plays no part in the criminal act with which the defendant is later charged.' [Citation.] His identity is ordinarily not necessary to the defendant's case, and the privilege against disclosure properly applies." (50 Cal.2d at p. 808.)[6]

---

[6] According to the affidavit to the search warrant, the informant before November 3 provided Cofield with certain information, after which Cofield obtained an address for the telephone number he was given and the name of respondent, to whom the calls were billed; Cofield also obtained information about respondent's vehicles; Cofield then surveilled respondent's residence and on November 12 followed respondent, who drove his (respondent's) car, picked up a passenger, and drove to the parking lot at Claremont Men's College where the passenger got out of respondent's car with a dark package the size of a football and entered another car, which was the only other car in the lot; the passenger looked all around and appeared nervous; respondent then drove to a residence in San Gabriel, delivered a package, then drove home. On November 16, Cofield went to respondent's residence and smelled the odor of marijuana as he stood on the curb in front of the house; on November 19, a narcotic-trained dog was walked down the sidewalk and at the house next to respondent's, the dog "alerted" to an odor of narcotics and tried cutting through the yard to respondent's house, behavior which indicates narcotics activity at the residence. The return to the search warrant indicates that as a result of a search of respondent's house and car on November 19, the

■ "There is a recognized public interest in shielding the anonymity of narcotics informers." (*People* v. *Superior Court* (*Biggs*), *supra*, 19 Cal.App.3d at p. 532.) As explained above, this public interest relates primarily to the public interest in maintaining the flow of information to law enforcement officers and not to the informant's expectations of confidentiality or fears for his personal safety.[7] ■ As there can be no question in the instant case that the public interest would suffer from the disclosure of the identity of the informant, the trial court erred in determining the threshold question of whether information was furnished in confidence. The trial court's findings of insufficient evidence that disclosure would harm the informant's safety or his usefulness to law enforcement are simply not determinative on the issue of confidentiality as set out in section 1041. The privilege was properly asserted.

■ Obviously, the police have to take their informants as they find them. Excluding from the scope of the privilege those informants who are placed in a position to provide information to the police because the informant is a suspect or is in custody places an unwarranted limit on the informer system "which has been of great help to and regarded as a necessity for law enforcement and which has existed from the very beginning of police work." (*People* v. *Pacheco* (1972) 27 Cal.App.3d 70, 81 [103 Cal.Rptr. 583].)

■ ■ ■ ■ ■ The trial court's analytical approach to the motion for disclosure, which placed the burden initially on the prosecution as to the issue of confidentiality, is incorrect for another reason: it is inconsistent with Evidence Code section 1042 and with general precepts of pretrial discovery by a defendant accused of a crime.[8]

---

officers found over 500 grams of marijuana, over $30,000 in cash, and "memo books containing pay-owe information" and "envelopes showing suspect payment totals and buyer information."

Unlike *McShann*, there is no evidence in the instant case that the informant had offered to buy the marijuana or in any other way was linked to the narcotics which were found in respondent's car and home and which were the basis for the charges against him.

[7] The *public policy* of nondisclosure of the identity of narcotics informants is paramount to the interest of any one particular informant. The public policy applies even if the informant is *known* to the defendant (*People* v. *McShann, supra*, 50 Cal.2d at p. 807), and even if the informant is dead. "Enforcement [of narcotics laws] is . . . most difficult without the use of 'stool pigeons' or informants. Their use has long had the approval of the courts. . . . Experience teaches that once this policy [of nondisclosure] is relaxed—even though the informant be dead—its effectiveness is destroyed." (*Roviaro* v. *United States* (1957) 353 U.S. 53, 66-67 [1 L.Ed.2d 639, 648, 77 S.Ct. 623] (dis. opn. of Clark, J.).)

[8] We also are concerned with the trial court's second-guessing of the officer's fears for the informant's safety, an issue which was not properly before the court as part of its duty in determining whether the privilege of section 1041 applies herein. While the trial court ostensibly found the officer had good reasons for his refusal to disclose the informant's identity, the

■ "In California, a defendant's right to pretrial discovery is founded upon 'the fundamental proposition that he is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information. [Citation.]' [Citation.] Even in this context, however, it has been consistently held that a defendant must establish 'some cause for discovery other than "a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime." [Citations.]' " (*People* v. *Crabb* (1987) 191 Cal.App.3d 390, 396 [236 Cal.Rptr. 385].)

■ "The process leading to the disclosure of the identity of an informer is one form of discovery in criminal cases. The defendant who elects to pursue that discovery has no constitutional right to refrain from making the showing requisite to it." (*People* v. *Sewell* (1970) 3 Cal.App.3d 1035, 1039-1040 [83 Cal.Rptr. 895].) A defendant who desires to obtain the identity of the informant when the prosecution invokes the privilege under section 1041, has the burden of showing a reasonable possibility that the informant could give evidence on the issue of guilt which might result in defendant's exoneration. (*People* v. *Reel* (1979) 100 Cal.App.3d 415, 421 [161 Cal.Rptr. 43].)

■ In the instant case, the court ordered disclosure of the identity of the informant without having considered the sufficiency of the showing for disclosure made by defendant. Such procedure results in an anomaly not contemplated or permitted by Evidence Code section 1042: the defendant may enjoy the benefit of a dismissal when he has not even made a showing that nondisclosure would deprive him of a fair trial.

Although the trial court never reached the latter issue, a remand for such a determination is unnecessary because the "determination here involved is one of law, namely whether the defendant has demonstrated 'a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoner-

court nevertheless found insufficient evidence that the informant's personal safety was in danger.

One court has criticized a magistrate who allowed defense counsel to participate telephonically in an in camera hearing: "Such a procedure was, of course, extraordinarily dangerous and one that we trust will never again be repeated. In addition, the questioning of the informant by the prosecution was needlessly specific and while we have no reason to doubt the verity of defense counsel's vows of silence in this instance, such disregard for the life and safety of those who cooperate with the authorities cannot be condoned." (*People* v. *Galante* (1983) 143 Cal.App.3d 709, 712 [192 Cal.Rptr. 184].) As *Galante* illustrates, it is not for the court or for the parties to take lightly a claim that the informant's life and safety is in danger. Presumably, it is only after the court has ordered disclosure, upon determining that the informant is a material witness on the issue of guilt, that the prosecution and/or the police decide whether they should risk the safety of the informant by disclosing his name in order to prosecute the defendant.

ation' . . . ." (*People* v. *Borunda* (1974) 11 Cal.3d 523, 529 [113 Cal.Rptr. 825, 522 P.2d 1].)[9]

There is absent in the record before us any showing that the informant could possibly be a material witness on the issue of guilt. While respondent need not produce evidence at the hearing on the motion to compel disclosure, but may rely upon reasonable inferences from the People's evidence (*People* v. *Alvarez* (1977) 73 Cal.App.3d 401, 406 [141 Cal.Rptr. 1]), no such inferences of materiality can be made from the evidence here. Defense counsel presented only the bare unsupported assertion that the informant was a material witness on the issue of possession for sale, and would support the defense theory that the marijuana was possessed for personal use; yet defense counsel did not explain how this informant, whose last contact with the defendant was before November 3, and who did not even know the defendant's full name or address, would possibly be able to give evidence on defendant's reason for possessing marijuana on November 19, 1987.

"In sum, the present motion was but another of those unfortunately common instances wherein the defense confuses the fact that while it may sometimes be necessary to 'speculate' concerning the knowledge possessed by an informant [citations], it is never necessary for a defendant to 'speculate' concerning his own role in the scenario, something which is, of necessity, already fully known to him." (*People* v. *Galante, supra,* 143 Cal.App.3d 709, 711.)

Although the judge in the instant case granted the motion for disclosure on a limited ground and did not address the issue of materiality, it is clear from our record that the facts were without dispute and show that there is no reasonable possibility the informant would be a material witness on the issue of guilt. Accordingly, the motion should have been denied and, as we are entitled to do in the interest of judicial economy, we deem the same to be denied.

---

[9] Appellant contends in its reply brief that because the trial court erred, a remand is necessary in order for the trial court to engage in a "weighing process" mandated by Evidence Code sections 1040 and 1042. It is clear that under section 1042 the trial court does not engage in a weighing process in the traditional sense; it does *not* weigh the public interest in nondisclosure against the defendant's right to a fair trial. Rather, once the court concludes that there is a reasonable possibility that the informant can give evidence on the issue of guilt which might result in exoneration, the privilege of nondisclosure simply "will give way in the interest of justice." (*People* v. *Hardeman, supra,* 137 Cal.App.3d 823, 827; see also *Roviaro* v. *United States, supra,* 353 U.S. 53, 61 [1 L.Ed.2d 639, 645, 77 S.Ct. 623].) Pursuant to *Borunda,* and in the interest of judicial economy, a remand in the instant case is unnecessary. We are entitled to make the determination of whether respondent made the requisite showing for disclosure, as the issue is one of law on a record where the facts were undisputed.

## DISPOSITION

The order of dismissal is reversed.

Johnson, J., and Woods (Fred), J., concurred.

Respondent's petition for review by the Supreme Court was denied January 18, 1990.