[Civ. No. 49780. First Dist., Div. Two. Apr. 30, 1981.]

WILFRED GENE COOPER et al., Petitioners, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

502

**COUNSEL**

Larry M. Cowan, James H. Disney, Patrick R. Murphy, Public Defender, and Peter A. Berger, Deputy Public Defender, for Petitioners.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien and William D. Stein, Assistant Attorneys General, Gloria F. DeHart and Kristofer Jorstad, Deputy Attorneys General, for Real Party in Interest.

**OPINION**

MILLER, J.— ██ ██ ██ ██ Pursuant to direction from our Supreme Court, we issued an alternative writ of mandate directing respondent Contra Costa County Superior Court to grant petitioners'[1] motions to suppress evidence under Penal Code section 1538.5 and to disclose the identity of an informant as well as to sever petitioner Edward Joseph Horrigan's trial on violations of Penal Code sections 12020, subdivision (a), and 12021 or show cause why it should not do so.

The facts reveal that on February 14, 1980, at approximately 10 a.m., petitioner Wilfred Gene Cooper entered Yvonne's Jewelry store,

---

[1] Wilfred Gene Cooper, one of the three copetitioners in this action, escaped from Contra Costa County jail on October 30, 1980. He was subsequently arrested on robbery charges in Alabama and is in custody awaiting trial in that state. Consequently, Wilfred Cooper is not presently within California's jurisdiction. Courts have no jurisdiction over persons charged with crime unless they are either in actual or constructive custody. (*People v. Redinger* (1880) 55 Cal. 290, 298; *People v. Buffalo* (1975) 49 Cal.App.3d 838, 839 [123 Cal.Rptr. 308].) However, dismissal of an action is within the court's discretion. (*People v. Redinger, supra,* 55 Cal. at p. 296; *People v. Buffalo, supra,* 49 Cal.App.3d at p. 839.) Since this court's determination in the instant case perforce affects Wilfred Cooper, we have chosen not to dismiss his petition.

pulled out a gun, and robbed the store's owner of approximately $150,000 worth of jewelry. While the robbery was in progress Lynda Marie Cooper stood at the door to the store as a lookout. At the same time that the robbery took place, petitioner Horrigan was in an electronics store two doors away from Yvonne's. During the month of February 1980, the Coopers resided with Horrigan in apartment number 9 at 2096 Ascot Street in Moraga.

Acting on information connecting petitioner Horrigan to the crime that was received from an FBI confidential informant, surveillance of Horrigan commenced on the afternoon of February 14, 1980. On the morning of February 15, Special Agent Diedrich followed Horrigan and Cooper as they drove in a Cadillac from Moraga to the vicinity of San Francisco Airport but then lost them. However, later that afternoon the car returned to Moraga with codefendant Bobby Gene Jones,[2] together with Horrigan and Cooper. The three entered Horrigan's apartment on Ascot Street.

Special Agent Latting received permission from a tenant living across the street from Horrigan's apartment to use her premises and positioned himself so that he could clearly see into apartment number 9 at 2096 Ascot Street. Latting observed all three petitioners and codefendant Bobby Jones inside the apartment from approximately 1 p.m. until 3 p.m. On a table was a scale that was being used to weigh objects with a gold glint. Latting then called for another agent to bring his binoculars, so he could determine exactly what was being weighed on the scale.

With assistance of binoculars, Agent Latting was able to see that jewelry was being handled and weighed by all the people in the apartment. At approximately 3 p.m. Latting joined in a conference call with Agent Desvernine and Police Officer King to a magistrate in order to obtain a search warrant for Horrigan's apartment. The magistrate heard sworn testimony regarding the robbery, the information from the confidential informant and a description of Agent Latting's observations. The magistrate was specifically requested that the information obtained by use of the binoculars not be considered in the determination of probable cause for the purposes of issuing the search warrant. Complying with this request, the magistrate still found probable cause for issuance of a warrant. The magistrate then ordered that the oral affida-

---

[2]Jones does not join in the instant petition.

vit be transcribed and that portion of the affidavit which dealt with the informant be sealed.

A few minutes before the conference call, the four suspects left the apartment, entered the Cadillac and drove away. Sergeant Caskey of the Walnut Creek Police Department, who also had been keeping the Horrigan apartment under surveillance, saw petitioners enter the Cadillac and drove away. Being aware of surveillance conducted by FBI agents which indicated that the jewelry was apparently being divided or prepared to be moved, Caskey, without a warrant, ordered that the Cadillac be stopped and petitioners arrested. The car was stopped and the occupants arrested for possession of stolen property. Jewelry from the robbery was found in the possession of Lynda Cooper; coins from the robbery were found in the pockets of Bobby Gene Jones.

Pursuant to the magistrate's approval of the telephonic application for a search warrant for Horrigan's apartment, apartment number 9 at 2096 Ascot Drive was searched. Upon entering, Sergeant Caskey noticed there were narcotics, narcotic paraphernalia and weapons in the apartment. The search warrant did not authorize a search for such items. Caskey decided to get a new warrant for the search of both the apartment and two automobiles in order to search for evidence of any narcotic activity. When the second search warrant was executed, the police seized various items including a sawed-off .410 shotgun, a 12-gauge magnum sawed-off shotgun, handguns, ammunition, drugs and drug paraphernalia and jewelry. Additional jewelry and gold ingots from the robbery were found in a box underneath the seat of the Cadillac.

At the preliminary hearing petitioners' counsel moved 1) to disclose the identity of the informant, 2) to disclose any factual information the informant gave regarding the charged crimes, and 3) to unseal that portion of the telephonic affidavit for the search warrant which was sealed. FBI Agent Graham Desvernine, one of the affiants in the telephonic search warrant that was obtained, asserted a privilege not to reveal the identity of the informant or the nature of information revealed by the informant pursuant to sections 1040 and 1041 of the Evidence Code. The prosecutor, being adverse to having questions asked in open court, requested "a 1042 in-camera hearing" on the motions.

An *in camera* hearing was held in which only the judge, the prosecutor, the witness and a court reporter were present. The judge

determined that the informer was not a material witness within the meaning of section 1042 of the Evidence Code and he denied petitioners' motions to disclose the informant's identity and unseal the sealed portion of the telephonic affidavit.

Thereafter, *in camera* hearings were conducted when the same privilege was invoked during the testimony of Walnut Creek Police Officer Randy King, FBI Agent Gerald Diedrich, FBI Agent Charles Latting and Sergeant Robert Caskey. The judge made identical rulings after each hearing.[3]

■ It is uncontested that there was a warrantless arrest of petitioners at the time of the auto stop. Accordingly, the burden is on the prosecution to justify the reasonableness of the arrest and seizure. (*People v. Haven* (1963) 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927]; *People v. Pace* (1979) 92 Cal.App.3d 199, 204 [154 Cal.Rptr. 811].) Since it is generally conceded that the information from the confidential informant was the crucial component in the finding of probable cause, petitioners contend that 1) evidence regarding the reliability of the informant must be produced in open court and 2) the information from the informant used by the police to determine probable cause to stop the car and arrest the petitioners must be revealed to the defense or be stricken from a consideration of probable cause and all evidence recovered as a result of such arrest must be suppressed.

*Reliability of the Informant*

■ In *Priestly v. Superior Court* (1958) 50 Cal.2d 812 [330 P.2d 39], the prosecution attempted to show reasonable cause for a warrantless search by testimony as to communications from a confidential informant. The defendant sought either to exclude the testimony or to compel disclosure of the informant's identity. On review our Supreme Court stated the following: "If testimony of communications from a confidential informer is necessary to establish the legality of a search, the defendant must be given a fair opportunity to rebut that testimony. He must therefore be permitted to ascertain the identity of the informer, since the legality of the officer's action depends upon the credibility of the information, not upon facts that he directly witnessed and upon which he could be cross-examined. If an officer were allowed to estab-

[3]Transcripts of the *in camera* hearings were ordered sealed, became part of the record and have been reviewed by this court.

lish unimpeachably the lawfulness of a search merely by testifying that he received justifying information from a reliable person whose identity cannot be revealed, he would become the sole judge of what is probable cause to make the search. Such a holding would destroy the exclusionary rule. Only by requiring disclosure and giving the defendant an opportunity to present contrary or impeaching evidence as to the truth of the officer's testimony and the reasonableness of his reliance on the informer can the court make a fair determination of the issue." (P. 818.)

The *Priestly* rule was modified by the enactment of Evidence Code section 1042, subdivision (c). (*Parsley v. Superior Court* (1973) 9 Cal.3d 934, 941 [109 Cal.Rptr. 563, 513 P.2d 611].) Subdivision (c) provides that "... in any preliminary hearing, criminal trial, or other criminal proceeding, any otherwise admissible evidence of information communicated to a peace officer by a confidential informant, who is not a material witness to the guilt or innocence of the accused of the offense charged, is admissible on the issue of reasonable cause to make an arrest or search without requiring that the name or identity of the informant be disclosed if the judge or magistrate is satisfied, *based upon evidence produced in open court*, out of the presence of the jury, that such information was received from a reliable informant and in his discretion does not require such disclosure." (Italics supplied.)

The *Parsley* court construed subdivision (c) in light of the *Priestly* rule: "[I]n order to admit at a preliminary hearing evidence relevant to the reasonableness of an arrest or search that is based on communications of a confidential informant, the judge or magistrate must either (1) compel disclosure of the informant's identity as required by *Priestly*, or (2) exercise his discretion *based on evidence produced in open court* that the informant is reliable and that disclosure is not required." (9 Cal.3d at p. 942, italics supplied.) Relying on *McCray v. Illinois* (1967) 386 U.S. 300 [18 L.Ed.2d 62, 87 S.Ct. 1056], the court reasoned that, "[f]ull cross-examination of prosecution witnesses concerning informant reliability is not only necessary for proper exercise of the court's discretion on this issue under section 1042, subdivision (c), it appears to be a constitutional prerequisite to invoking the informant privilege." (*Ibid.*)

While we do not hold that the identity of the informant in the instant action must be disclosed, we find that the correct procedure for making

such a determination was not followed. In response to petitioners' motions to disclose the identity of the informant, the prosecutor requested "a 1042 in-camera hearing." While an *in camera* hearing may have been appropriate pursuant to subdivision (d) of section 1042[4] upon a finding that the informant was a material witness, such was not the situation in the present case. Both the municipal court judge who conducted the *in camera* hearings and the superior court judge who reviewed the sealed transcripts in considering petitioners' Penal Code section 995 motion ruled that the informant was not a material witness. Once the finding was made that the informant was not a material witness, full cross-examination of prosecution witnesses concerning the reliability of the informant should have been permitted in open court.

Having concluded that an open-court hearing must be conducted to determine the question of informant reliability, it seems obvious that the information given by the informant must be disclosed. In *McCray* v. *Illinois, supra,* 386 U.S. 300, the United States Supreme Court held that the United States Constitution does not require abolition of the informant privilege where an informant's communication has been used to establish cause for an arrest or search. The court specifically cited former subdivision (c) of section 1042 of the California Evidence Code in its opinion. In upholding the privilege, the court emphasized the procedures that had been followed in the *McCray* trial and presumably

---

[4]Subdivision (d) of section 1042 provides: "When, in any such criminal proceeding, a party demands disclosure of the identity of the informant on the ground the informant is a material witness on the issue of guilt, the court shall conduct a hearing at which all parties may present evidence on the issue of disclosure. Such hearing shall be conducted outside the presence of the jury, if any. During the hearing, if the privilege provided for in Section 1041 is claimed by a person authorized to do so or if a person who is authorized to claim such privilege refuses to answer any question on the ground that the answer would tend to disclose the identity of the informant, the prosecuting attorney may request that the court hold an in camera hearing. If such a request is made, the court shall hold such a hearing outside the presence of the defendant and his counsel. At the in camera hearing, the prosecution may offer evidence which would tend to disclose or which discloses the identity of the informant to aid the court in its determination whether there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial. A reporter shall be present at the in camera hearing. Any transcription of the proceedings at the in camera hearing, as well as any physical evidence presented at the hearing, shall be ordered sealed by the court, and only a court may have access to its contents. The court shall not order disclosure, nor strike the testimony of the witness who invokes the privilege, nor dismiss the criminal proceeding, if the party offering the witness refuses to disclose the identity of the informant, unless, based upon the evidence presented at the hearing held in the presence of the defendant and his counsel and the evidence presented at the in camera hearing, the court concludes that there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial."

should be followed in all cases to determine the informant's reliability: "The arresting officers in this case testified, in open court, fully and in precise detail as to what the informer told them and as to why they had reason to believe his information was trustworthy. Each officer was under oath. Each was subjected to searching cross-examination. The judge was obviously satisfied that each was telling the truth, and for that reason he exercised the discretion conferred upon him by the established law of Illinois to respect the informer's privilege." (386 U.S. at p. 313 [18 L.Ed.2d at p. 72]; see also *Parsley* v. *Superior Court, supra*, 9 Cal.3d at p. 934.) Accordingly, such information as is necessary to test the reliability of the informant should be disclosed in open court.

*The Search Warrant*

■ In a somewhat related issue, petitioners contend that since the sealed portion of the telephonic affidavit for the first search warrant was unavailable to the defense and therefore petitioners were unable to challenge the reliability of the informant, the search warrant must be quashed. We disagree.

Evidence Code section 1042, subdivision (b) specifically provides ". . . where a search is made pursuant to a warrant valid on its face, the public entity bringing a criminal proceeding is not required to reveal to the defendant official information or the identity of an informer in order to establish the legality of the search or the admissibility of any evidence obtained as a result of it."

The Legislature has clearly established a different procedure for dealing with informant reliability in the case of attacking the sufficiency of a search warrant as opposed to challenging probable cause for making a warrantless arrest or search. In *People* v. *Keener* (1961) 55 Cal.2d 714 [12 Cal.Rptr. 859, 361 P.2d 587], our Supreme Court discussed the rationale for the difference: "If a search is made pursuant to a warrant valid on its face and the only objection is that it was based on information given to a police officer by an unnamed informant, there is substantial protection against unlawful search and the necessity of applying the exclusionary rule in order to remove the incentive to engage in unlawful searches is not present. The warrant, of course, is issued by a magistrate, not by a police officer, and will be issued only when the magistrate is satisfied by the supporting affidavit that there is probable cause. He may, if he sees fit, require disclosure of the identity of the informant before issuing the warrant or require that the informant be

brought to him. The requirement that an affidavit be presented to the magistrate and his control over the issuance of the warrant diminish the danger of illegal action, and it does not appear that there has been frequent abuse of the search warrant procedure. One of the purposes of the adoption of the exclusionary rule was to further the use of warrants, and it obviously is not desirable to place unnecessary burdens upon their use. The additional protection which would result from application of the Priestly rule in situations such as the one involved here would not offset the disadvantages of excluding probative evidence of crime and obstructing the flow of information to police. It follows from what we have said that where a search is made pursuant to a warrant valid on its face, the prosecution is not required to reveal the identity of the informer in order tò establish the legality of the search and the admissibility of the evidence obtained as a result of it." (Pp. 722-723.)

Consequently, courts have consistently held that disclosure of the identity of an informant who has supplied probable cause for the issuance of a search warrant is not required where disclosure is sought merely to aid in attacking probable cause. (*People* v. *Borunda* (1974) 11 Cal.3d 523, 527 [113 Cal.Rptr. 825, 522 P.2d 1].)

*Use of Binoculars*

■ Petitioners next contend that the binocular observations were an unreasonable invasion of petitioners' expectations of privacy in the Horrigan apartment.

In *People* v. *Arno* (1979) 90 Cal.App.3d 505 [153 Cal.Rptr. 624], the court held that "(1) the use of optical aids in the nature of binoculars, telescopes and the like is not itself determinative of the admissibility in evidence of the product of the observation; (2) the primary determinative factor is the presence or absence of a reasonable expectation of privacy of the person whose conduct, property, or documents is observed; (3) reasonable expectation of privacy in the context here involved is tested by the extent to which the person has exposed his conduct, property, or documents to public view by the naked eye; (4) if the purpose of the optically aided view is to permit clandestine police surveillance of that which could be seen from a more obvious vantage point without the optical aid, there is no unconstitutional intrusion; and (5) if the purpose of the optical aid is to view that which could not be seen without it, there is." (P. 509.)

In the instant case there was no reasonable expectation of privacy. Things which are fully disclosed to the eye of a government agent who has a right to be where he is, are admissible. (*Dillon* v. *Superior Court* (1972) 7 Cal.3d 305, 310 [102 Cal.Rptr. 161, 497 P.2d 505].) Here Agent Latting could clearly see into the Horrigan household from a neighbor's apartment. For two hours he observed the four suspects around a table. On the table was a scale which was being used to weigh objects with a gold glint. Although the precise description of the objects being weighed could not be determined without the aid of binoculars, the activity of the suspects weighing gold was in plain view. The petitioners can assert no expectation of privacy for this activity.

*Seized Items Not Listed in Search Warrant*

█ During the course of the search of Horrigan's apartment, the police seized several items which were not specifically itemized in the warrant. The trial court determined that two walkie-talkies, a license plate and various tools were illegally seized. Petitioners assert that the police also illegally seized certain jewelry found in the apartment and a white plastic raincoat which were not listed in the search warrant. The assertion is without merit.

The general rule that police may seize only those articles enumerated in a search warrant is not without limitation. (*People* v. *Superior Court* (*Meyers*) (1979) 25 Cal.3d 67, 73 [157 Cal.Rptr. 716, 598 P.2d 877].) "When officers, in the course of a bona fide effort to execute a valid search warrant, discover articles which, although not included in the warrant, are reasonably identifiable as contraband, they may seize them whether they are initially in plain sight or come into plain sight subsequently, as a result of the officers' efforts." (*Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 157 [81 Cal.Rptr. 613, 460 P.2d 485].) In *People* v. *Hill* (1974) 12 Cal.3d 731 [117 Cal.Rptr. 393, 528 P.2d 1], overruled on other grounds in *People* v. *DeVaughn* (1977) 18 Cal.3d 889, 896 [135 Cal.Rptr. 786, 558 P.2d 872], our Supreme Court fashioned a "nexus rule" to prohibit police officers from indiscriminately seizing any items whatsoever. "The police officers who seize an article must be presently aware of some specific and articulable fact from which a rational link between the item seized and criminal behavior can be inferred." (12 Cal.3d at p. 763; see also, *People* v. *Superior Court* (*Meyers*), *supra*, 25 Cal.3d at p. 73.)

Sergeant Caskey, the police officer who made the search in this action, was aware that a large quantity of gold jewelry had been stolen from Yvonne's Jewelry store. He also knew that the suspects had been observed weighing gold objects on the table near where the bag containing the seized jewelry was located. Such knowledge provided the requisite nexus between the seized jewelry and criminal behavior. While not identical, the seized plastic raincoat was similar to the description of the one worn by the robber at Yvonne's.

*Severance of Unrelated Offenses*

Finally, petitioner Horrigan contends that the trial court should have ordered a separate trial for his unrelated offenses dealing with his possession of a .410 shotgun.

As a general rule, writs of mandate are issued only if the petitioner has unsuccessfully sought relief in the trial court. (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 168 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416].) Horrigan successfully moved for severance on his narcotic charges but failed to request severance on the gun-related counts. Therefore, until petitioner specifically requests the lower court to order a separate trial for the firearm charges and establishes that the trial court improperly refused such request, we shall not afford petitioner relief on that issue.

Let a peremptory writ of mandate issue directing the trial court to conduct a hearing in open court to determine whether information utilized by the police to establish probable cause for the warrantless arrest was received from a reliable informant.

Taylor, P. J., and Rouse, J., concurred.

Petitions for a rehearing were denied May 29, 1981, rule 27(e), California Rules of Court. The petition of real party in interest for a hearing by the Supreme Court was denied July 22, 1981, and petitioners' application for a hearing by the Supreme Court was denied July 23, 1981.