[No. A044748. First Dist., Div. Three. Apr. 30, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM LEONARD SEIBEL, Defendant and Appellant.

COUNSEL

Julie Schumer, Glass & Kramer and William Everett Glass for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Blair W. Hoffman, Mary A. Roth and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BARRY-DEAL, J.**—In this case we are called upon to resolve the tension between the due process rights of the defendant and the public need to protect the identity of a confidential informant. (See Evid. Code, § 1042, subd. (b).) The issue before us is whether the superior court erred in upholding a warrant search where the major portion of the affidavit in support of the warrant was sealed to protect the informant's identity.

We find that the procedures utilized by the magistrate and the superior court, while they met the state's need to protect confidentiality of an informant, did not sufficiently safeguard the defendant's right to test the affidavit. We hold that where portions of an affidavit are sealed, procedures similar to those established in *People v. Luttenberger* (1990) 50 Cal.3d 1 [265 Cal.Rptr. 690, 784 P.2d 633] should be utilized in order to assure fairness to both the prosecution and the defendant. Because appellant's rights were not protected in this instance, we reverse and remand the case to the superior court for further proceedings.

### Procedural History

The offenses occurred on December 18, 1986. The issue of the propriety of sealing the affidavit was raised for the first time by a written motion which is not included in the record. The motion was heard at hearings on March 20 and April 27, 1987. Appellant objected to the sealing of the affidavit and moved to unseal it, arguing that the sealing deprived him of his due process rights under *Franks v. Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674] (hereafter *Franks*). In particular, he argued that he could not attack probable cause and that he could not allege that the affidavit contained misstatements or omissions which might show that the statements supporting a finding of probable cause were not truthful. The court (the magistrate who had issued the warrant) addressed both issues.

Regarding probable cause, the court said that appellant's rights were protected because a series of judges would review the affidavit. But the court found the *Franks* issue more troublesome, noting, "No amount of judicial review will question the accuracy of the facts in the affidavit. The only way that accuracy can be questioned is if (a) the defense is aware of it and (b) they then learn things that are to the contrary and bring that to the attention of the Court."

Ultimately the court, stating that in this case disclosure of the sealed affidavit would reveal the identity of the informant, denied the motion, "even understanding that that would mean that no one from the defense side will ever be able to review the affidavit and say that there were false facts reported."

Preliminary hearing was held on February 10, 1988. At the conclusion of the hearing, the court held appellant to answer for violations of Health and Safety Code sections 11351, 11359, and 11378, with an enhancement under Penal Code section 1203.073, subdivision (b)(1),[1] that is, possession for sale of more than one ounce of cocaine, possession for sale of marijuana, and possession for sale of methamphetamine, with an ineligibility for probation enhancement. An information charging these offenses was filed, and appellant moved to dismiss it pursuant to section 995, alleging that he was denied a substantial right at the preliminary hearing because the magistrate erred in refusing to unseal the affidavit. (See *Jennings* v. *Superior Court* (1967) 66 Cal.2d 867 [59 Cal.Rptr. 440, 428 P.2d 304]; *People* v. *Hertz* (1980) 103 Cal.App.3d 770, 776 [163 Cal.Rptr. 233]; 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Proceedings Before Trial, §§ 2110-2111, pp. 2479-2482.) The district attorney opposed the motion, and after hearing argument, the superior court denied the motion on May 16, 1988.

Appellant filed a petition for a writ of prohibition in this court in which he again challenged the magistrate's refusal to unseal the affidavit. (Seibel v. Superior Court, No. A042501.) After obtaining opposition and reviewing the sealed records, this court (White, P. J., Barry-Deal, J., and Strankman, J.) denied the writ and ordered the affidavits resealed.

Appellant then moved in the superior court to suppress evidence under section 1538.5, alleging that the warrant was "so totally lacking in probable cause" that no officer could rely on it in good faith, and that the information in the sealed affidavit must have been stale. He repeatedly alluded to the sealed affidavit when he asserted that he had "no information" or that the affidavit (that is, the unsealed portions) contained "no information" which

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

would support a finding of probable cause or good faith. While he did not expressly reargue the propriety of the magistrate's refusal to unseal the affidavit or ask that it be unsealed, he concluded his written motion with these words: "Defendant has been repeatedly denied access to the remaining sealed portions of the warrant affidavit that profess to provide further evidence of probable cause. Defendant has no information that would lead him to believe that the statements contained in the sealed portion of the warrant are in fact reliable, or provide further corroboration of the meager information contained in the unsealed portion of the warrant. In fact, Defendant has information that he did not sell cocaine to any person within seven days of December 11, 1986, which would call into serious question the reliability and accuracy of the information provided by the informant herein."

At the hearing on the section 1538.5 motion, appellant argued several points, including staleness of the authorization for nighttime service. Regarding the sealed affidavit, he took this position: "We can't talk about the truth about it and do a *Franks,* because it is sealed. But assuming that it's true, which you have to do at this point . . . ." The court denied the section 1538.5 motion, and on January 9, 1989, appellant withdrew his not guilty plea and entered pleas of guilty to the charged offenses and the enhancement of probation ineligibility. The plea was entered with the understanding that appellant would be sentenced to three years in prison, that he would file a notice of appeal upon sentence, and that he would be granted bail pending appeal. The court sentenced appellant to a three-year prison term on count one and concurrent two-year terms on the other two counts.

Appellant filed a timely notice of appeal from the judgment, specifying issues of denial of his sections 1538.5 and 995 motions.

### The Facts

The search warrant was issued on December 11, 1986, for the search of appellant's person, his automobile, and his residence at 4891-A Myrtle Drive in Concord, and authorized a nighttime search only on that night. The warrant authorized the seizure of drugs, paraphernalia, indicia of ownership, and money, including marked money. Walnut Creek Police Officer Loren Cattolico, a member of the Central Contra Costa County Narcotics Enforcement Team, executed the affidavit in support of the warrant, which included corroborating information as to appellant's identity and residence and the expertise and experience of the officer.

Three pages relating to the informant were sealed. The warrant did include the following paragraph: "Within the last seven days, . . . a CI [confidential informant] . . . told me of a man named William Seibel who

sold cocaine. CI purchased an amount of cocaine from William Seibel . . . ."

Officer Cattolico and other officers served the warrant on appellant in his home at about 8 p.m. on December 18, 1986.[2] The search of the very small one-bedroom house produced, among other things, indicia of ownership of the house, $1,595 in cash, 929 grams of cocaine, 81 grams of marijuana, 13.7 grams of methamphetamine, and drug packaging materials such as baggies.

## Discussion

### Propriety of Appeal

The Attorney General argues that appellant's motions to unseal a search warrant affidavit were not motions to suppress evidence under section 1538.5, and that therefore appellant's guilty plea precludes his appealing the lower courts' orders denying those motions. We hold that the appeal is properly before us. It is apparent from the procedural history of the case set out above that appellant repeatedly raised the issue of propriety of the sealing of the affidavit at all stages of the proceeding, including the seeking of a writ in this court. Appellant raised the validity of the search warrant by a section 1538.5 motion in which he attacked the warrant on a number of bases. It is true that he did not expressly renew his previous motions to unseal the affidavit. However, the issue was implicitly renewed when he argued in support of his suppression motion that the affidavit on its face did not provide sufficient facts to support a finding of probable cause and that appellant had "no information" from which he could conclude that the sealed portion of the affidavit contained more specific, timely, and reliable information. The issue was expressly renewed in appellant's moving papers when he complained that he had "been repeatedly denied access to the remaining sealed portions of the warrant affidavit . . . ," and when he attacked, as best he could under the circumstances, the veracity of the affidavit by arguing that he had information that he had not sold cocaine within seven days of the date of the affidavit. At no time did the People object to the propriety of appellant's raising a discovery issue by way of a section 1538.5 motion. Accordingly, they should not be heard to object on appeal. (*People* v. *Martin* (1969) 2 Cal.App.3d 121, 125-126 [82 Cal.Rptr. 414]; 4 Witkin & Epstein, Cal. Criminal Law, Exclusion of Illegally Obtained Evidence, *supra,* § 2250, p. 2645.)

---

[2] A warrant which can only be served in "daytime" may be served between 7 a.m. and 10 p.m. (§ 1533.)

Also, on January 9, 1989, when appellant changed his plea to one of guilty, he did so with the express understanding of the court and both counsel that the defense would immediately "file a Notice of Appeal upon sentence, and he [appellant] will be granted bail pending appeal." The People argue only that the issue is not cognizable on appeal. They fail to note that if they are correct, a proper procedure in keeping with the agreement entered into in open court would be for this court to vacate appellant's guilty plea and remand the case for trial, after which appellant presumably could appeal and properly raise the issue. In any event, as will appear below, appellant's guilty plea must be vacated because he was deprived of his due process rights by the manner in which the validity of the search warrant was determined by the magistrate. Accordingly, we reject the People's attack on the propriety of the appeal.

### Sealing "Official Information"

Appellant contends that error occurred below in the denial of his motion to unseal the affidavit because there was no showing that the information contained in it was acquired "in confidence." His argument is based on the following language of Evidence Code sections 1040 and 1042.

Evidence Code section 1042 provides in relevant part that where a search is made pursuant to a warrant which is valid on its face, the public entity is not required to reveal "official information or the identity of an informer in order to establish the legality of the search or the admissibility of any evidence obtained as a result of it." (Evid. Code, § 1042, subd. (b).) If the informant is not a material witness to the charged offense, the information which he or she communicated to the public entity is admissible on the issue of probable cause to arrest or search without requiring the informant's identity to be revealed, if the court in its discretion is satisfied, based on evidence presented in court, that the information was received from a reliable informant. (Evid. Code, § 1042, subd. (c).)

Evidence Code section 1040 defines " 'official information' " as information "acquired in confidence." (Evid. Code, § 1040, subd. (a).)[3] Appellant's argument that there was no showing below that the information in the sealed affidavit was acquired in confidence misses the point. The privilege

---

[3] Evidence Code section 1041, which establishes the privilege for identity of an informant, provides in relevant part that a public entity has a privilege to refuse to disclose the identity of a person who has furnished information to a law enforcement officer if disclosure is against public policy because the interest in preserving the confidentiality of the informant's identity outweighs the necessity for disclosure. (Evid. Code, § 1041, subd. (a).) It also provides that the section applies only if the information is furnished "in confidence" by the informant to a law enforcement officer or other appropriate government agent. (Evid. Code, § 1041, subd. (b).)

claimed and upheld here was not one of official information, but of identity of the informant. This distinction was critical in the recent decision, *People v. Otte* (1989) 214 Cal.App.3d 1522 [263 Cal.Rptr. 393], review denied January 18, 1990. In *Otte* the defendant moved to discover the identity of an informant who had supplied information relied on by the police in obtaining a search warrant for defendant's residence and vehicle. The trial court granted the motion, and when the People refused to disclose the identity of the informant, the court dismissed the information. On appeal by the People, the appellate court reversed.

The trial court had determined as a matter of law that the informant privilege did not apply because the informant did not give information to the police "in confidence" within the meaning of Evidence Code section 1041, subdivision (b), and *Shepherd v. Superior Court* (1976) 17 Cal.3d 107, 124 [130 Cal.Rptr. 257, 550 P.2d 161]. (*People v. Otte, supra,* 214 Cal.App.3d at pp. 1526-1529.) The Court of Appeal rejected this rationale. It explained that the privilege provided in Evidence Code section 1041 is one which protects confidentiality of the identity of the informant, not necessarily the information which the informant gives to the police. This view is in keeping with the public policy of encouraging citizens to fulfill their obligation to communicate knowledge about crime to law-enforcement officials. (*Otte, supra,* at p. 1529.)

Addressing the "in confidence" language of Evidence Code section 1041, subdivision (b) (see fn. 3, *ante*), the *Otte* court said that it must be read in conjunction with subdivision (a), "which speaks of the public interest in preserving the 'confidentiality of [the informant's] identity.' Thus, the concept of confidentiality in section 1041 does not refer to the information communicated, unless the contents would disclose or tend to disclose the identity of the informant (*People v. McShann* [1958] 50 Cal.2d 802, 807 [330 P.2d 33]); nor does it depend on the subjective intent or desires of the informant. The confidentiality of which section 1041 speaks is the public interest in the confidentiality of the informant's identity for purposes of effective law enforcement." (*People v. Otte, supra,* 214 Cal.App.3d at p. 1531; but see *Swanson v. Superior Court* (1989) 211 Cal.App.3d 332, 337, fn. 3 [259 Cal.Rptr. 260].)

The *Otte* court stressed the strong public interest in shielding narcotics informants. It concluded that the trial court's finding that there was insufficient evidence that disclosure would harm the informant's safety or usefulness was not determinative on the issue of confidentiality set forth in Evidence Code section 1041. Rather, the privilege should have been upheld because there was "no question . . . that the public interest would suffer

from the disclosure of the identity of the informant . . . ." (*People* v. *Otte, supra,* 214 Cal.App.3d at p. 1534.)

■ Here, as in *Otte,* the statutory privilege claimed is not based upon official information having been given "in confidence," but rather on the public interest in protecting the identity of the informant who gave information, which interest outweighs the need of the defense for disclosure. On the other hand, unlike *Otte,* here the sealed portion of the affidavit contained more than the identity of the informant; it also contained a narrative of a controlled buy. If the trial court correctly found that these facts were properly sealed, its finding should have been based not on the concept that they were "official information," but on the concern that revealing them would have revealed the identity of the informant. Appellant's attack based on an "official information" approach cannot prevail under the circumstances.

### Sealing of Affidavit

Appellant complains that the "wholesale sealing of the affidavit" and the procedures in which the magistrate, the superior court, and this court have reviewed the sealed affidavit deprived him of a full and fair opportunity to traverse the warrant and to raise questions of sufficiency of the warrant under *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317], or questions concerning veracity of the facts alleged in the affidavit under *Franks, supra,* 438 U.S. 154. We do not agree that the sealing of what amounted to the entire affidavit necessarily deprived appellant of his rights, but we do agree that the manner in which the magistrate and the superior court reviewed the affidavit was not sufficient to protect his interests.

■ " 'It is well settled that California does not require disclosure of the identity of an informant who has supplied probable cause for the issuance of a search warrant where disclosure is sought merely to aid in attacking probable cause. (*People* v. *Keener* (1961) 55 Cal.2d 714, 723 [12 Cal.Rptr. 859, 361 P.2d 587]; see also *McCray* v. *Illinois* (1967) 386 U.S. 300 [18 L.Ed.2d 62, 87 S.Ct. 1056].) . . .' " (*People* v. *Borunda* (1974) 11 Cal.3d 523, 527 [113 Cal.Rptr. 825, 522 P.2d 1]; Evid. Code, § 1042, subd. (b); 2 Witkin, Cal. Evidence (3d ed. 1986) Witnesses, § 1281, pp. 1223-1224; see also *United States* v. *Ventresca* (1965) 380 U.S. 102, 108 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741]; *People* v. *Flannery* (1985) 164 Cal.App.3d 1112, 1116-1117 [210 Cal.Rptr. 899]; *Cooper* v. *Superior Court* (1981) 118 Cal.App.3d 499, 508-509 [173 Cal.Rptr. 520].) The general rule of not requiring disclosure of a " 'mere informer' " is in keeping with the limited role played by an informant. He or she " ' ". . . simply points the finger of suspicion toward a person who has violated the law, . . . play[ing] no part

in the criminal act with which the defendant is later charged." [Citation.] . . .' " (*People* v. *Garcia* (1967) 67 Cal.2d 830, 836 [64 Cal.Rptr. 110, 434 P.2d 366].)[4]

The critical nature of the government's interest in a policy of nondisclosure has been long recognized. " '. . . Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness to the government and discourages others from entering into a like relationship. [¶] That the government has this privilege is well established, and its soundness cannot be questioned.' (Footnotes omitted.) [Citation.]" (*McCray* v. *Illinois* (1967) 386 U.S. 300, 308-309 [18 L.Ed.2d 62, 69, 87 S.Ct. 1056], quoting 8 Wigmore on Evidence (McNaughton ed. 1961) § 2374, p. 762; *People* v. *McShann* (1958) 50 Cal.2d 802, 806-808 [330 P.2d 33]; *People* v. *Flannery, supra,* 164 Cal.App.3d at pp. 1116-1117.)

The privilege of concealing the identity of an informant protects not only the informant's name but also those portions of communication from and about the informant which would tend to reveal his or her identity. (*Roviaro* v. *United States* (1957) 353 U.S. 53, 59-60, 62 [1 L.Ed.2d 639, 644-646, 77 S.Ct. 623]; see *People* v. *McShann, supra,* 50 Cal.2d at p. 807; but see 2 Witkin, Cal. Evidence, Witnesses, *supra,* at § 1266, p. 1207 ["The language of Ev.C. 1041 is clearly limited to identity."].) "Events may be as revealing as the informant's name. . . . Even innocuous details could let the cat out of the bag. And in the big-time drug business, to inform is to sign one's death warrant. So the author of the affidavit not only uses codes but also withholds details of the informant's observations." (See *U.S.* v. *Danovaro* (7th Cir. 1989) 877 F.2d 583, 587.)

In order to protect the identity of informants, public entities have sometimes used the procedure of sealing portions of affidavits in support of warrants. In light of the strong policy favoring protection, this and other appellate courts have approved this procedure. For example, in *People* v. *Flannery, supra,* 164 Cal.App.3d 1112, a substantial part of the information contained in the affidavit was obtained from an informant. "Attachment 2" to the affidavit provided data regarding reliability of the informant. This court approved use of a procedure whereby the magistrate who issued the search warrant first read the entire affidavit and then ordered "Attachment 2" sealed. (*Id.,* at p. 1114.) Later, at the preliminary hearing, when the affiant refused to disclose the identity of the informant, the magistrate read

---

[4]Appellant does not contend that the informant is a material witness, and our reading of the sealed affidavit confirms that no material witness was involved.

the sealed portion of the affidavit in camera to determine whether the informant was reliable. The magistrate then ordered the portion resealed until further court order. (*Id.*, at p. 1115.) Sometime later, at an in camera hearing to determine whether the informant was a material witness, the sealed portion of the affidavit was again used, coupled with telephonic and videotaped testimony by the informant. (*Ibid.*)

Defendant Flannery's sole contention on appeal was that the proceeding in which reliability was determined was improper because the determination had not been made in open court. (*People* v. *Flannery, supra*, 164 Cal.App.3d at p. 1116.) After reviewing the relevant public policies and statutory provisions, we rejected this claim, holding that the sealing of the portion of the affidavit and the use of in camera hearings were appropriate procedures which served to protect the identity of the informant. Among the factors considered by the court in reaching that conclusion was our own reading of the sealed portion of the affidavit, which demonstrated that revealing the information on the informant's reliability would automatically disclose the identity of the informant. (*Id.*, at pp. 1116-1121.)

The limitation of the *Flannery* holding to an affidavit which was not unnecessarily sealed was emphasized by the discussion and holding in *Swanson* v. *Superior Court, supra*, 211 Cal.App.3d 332. Defendants there contended that their motion to quash search warrants for their residences should have been granted because the affidavit supporting the warrants had been sealed in its entirety. The Court of Appeal agreed. (*Id.*, at p. 335.) The affiant officer testified at the preliminary hearing that he had secured both warrants, to which no affidavits were attached, after a hearing before the magistrate at which the officer and an untested informant appeared. That hearing had not been transcribed. The examining magistrate dismissed the complaint. The People refiled, this time requesting that the examining magistrate take judicial notice of the oral affidavit which had since been transcribed. The magistrate did so and denied defendants' suppression motion. In hearing defendants' section 995 motion, the superior court indicated that it had read the sealed affidavit in camera and denied the motion. (*Id.*, at p. 336.)

On appeal the court recognized that the sealing of the affidavit (transcript of the oral affidavit) arose from the privilege to conceal the identity of the informant under Evidence Code section 1041. The privilege, the court said, is normally protected where the affidavit is written, not by sealing the affidavit but by not identifying the informant by name. "[S]ufficient information must be given in the written affidavit to establish that the information given by the informant is reliable. This may necessitate limiting the details which might reveal identity. However, even then the affiant 'must

nonetheless include as much detail as practicable and must at least state generally that specific grounds for suspicion exist.' (*People* v. *Kurland* (1980) 28 Cal.3d 376, 395, fn. 12 [168 Cal.Rptr. 667, 618 P.2d 213].) A magistrate who wishes further information may require that the informant be produced or his [or her] identity disclosed in order to evaluate fully the existence of probable cause. (*Ibid.*; see also *Skelton* v. *Superior Court* (1969) 1 Cal.3d 144 [81 Cal.Rptr. 613, 460 P.2d 485].)" (*Swanson* v. *Superior Court, supra,* 211 Cal.App.3d at p. 338.)

The court held that the procedures used with written affidavits should also have been used with the oral affidavit before it, "starting first with the concealment of the name of the informant and proceeding, where necessary, to concealment of details which might identify the informant by taking these details in a manner which would permit their exclusion from that portion of the affidavit which is made public." (*Swanson* v. *Superior Court, supra,* 211 Cal.App.3d at p. 338.)

The court reviewed the facts of *People* v. *Flannery, supra,* 164 Cal.App.3d 1112, and concluded, "*Flannery* cannot be read to support the proposition that an entire affidavit, including all the factual material on which probable cause is grounded, may be sealed to safeguard the identity of a confidential informant." (*Swanson* v. *Superior Court, supra,* 211 Cal.App.3d at p. 339.) The court unanimously held that "the only portion of an affidavit that may be concealed from the defendant is that portion which necessarily would reveal the identity of a confidential informant." (*Ibid.*)[5]

Thus, the privilege to conceal the identity of an informant is well established, as is the notion that the privilege can properly be implemented by use of partially sealed affidavits. Contrary to one of appellant's arguments, these well-defined principles comprise a decisional exception to the statutory requirement that court documents relating to a warrant become a public record after the warrant is executed. (§ 1534, subd. (a).)

### Opportunity to Traverse

Appellant argues, however, that the sealing of affidavits is inconsistent with his right to raise questions concerning the legal sufficiency of the warrant under *Illinois* v. *Gates, supra,* 462 U.S. 213, and his due process right protected by the *Franks* decision to attack the veracity of the facts alleged in the affidavit. Under *Franks,* if the defendant makes a "substantial

---

[5]Justice Channell concurred in this holding but dissented on another point, namely, the majority's decision to refuse to permit the People to dismiss the information and render the petition moot. (*People* v. *Swanson, supra,* 211 Cal.App.3d at pp. 340, 342 (conc. and dis. opn. of Channell, J.).)

preliminary showing" that an affidavit in support of a search warrant contains a false statement which was necessary to a finding of probable cause, the defendant is entitled under the Fourth Amendment to a hearing. (*Franks, supra,* 438 U.S. at pp. 155-156 [57 L.Ed.2d at p. 672]; *People* v. *Broome* (1988) 201 Cal.App.3d 1479, 1490 [247 Cal.Rptr. 854].) Appellant suggests that a defendant cannot meet the burden of making a "substantial preliminary showing" if a large part or all of an affidavit is sealed.

The *Swanson* court recognized this dilemma. It acknowledged that it is only the affidavit which can provide the basis for "a variety of challenges to the search warrant," including challenges to the factual basis for probable cause, the reliability of the informant, whether the informant is a material witness, and the veracity of allegations upon which a finding of probable cause is based, that is, the *Franks* issue. (*Swanson* v. *Superior Court, supra,* 211 Cal.App.3d at p. 339.) Having recognized these potential uses for a sealed affidavit, the court said, "A defendant who cannot view any portion of the affidavit cannot make a judgment as to whether any of these challenges should be made. The People take the position that these challenges can be addressed by the courts as they review the sealed affidavit. This, of course, leaves the defendant without an adversary before the court who can not only ascertain that the appropriate challenges are considered but also that the defense argument is vigorously and effectively pursued." (*Ibid.*)

As a solution to this dilemma appellant in essence asks, as he did below, for discovery. The right to discovery by a criminal defendant was recently clarified by our Supreme Court in *People* v. *Luttenberger, supra,* 50 Cal.3d 1, which thoroughly analyzed that right in a factual setting so closely analogous to that presented in the case at bench that we find its analysis and holding applicable here.

*Luttenberger* dealt with an affidavit in which the officer had stated that the informant was reliable but had given no details about the informant's background or reliability.[6] Defendant did not allege that the affidavit was facially insufficient, and he did not seek disclosure of the informant's identity; instead he mounted a " 'sub-facial' " challenge. Before the preliminary hearing the defendant invoked the procedures established in *People* v. *Rivas* (1985) 170 Cal.App.3d 312 [216 Cal.Rptr. 477], asking for in camera review of information about the informant's background and reliability. (*People* v.

[6] It will be recalled that the unsealed portion of the affidavit here did not represent that the informant was reliable. It said, in relevant part, "Within the last seven days, a Confidential Informant hereafter referred to as a CI, told me of a man named William Seibel who sold cocaine. CI purchased an amount of cocaine from William Seibel (please read sealed portion now)."

*Luttenberger, supra*, 50 Cal.3d at pp. 7-8.)[7] The magistrate denied the motion; the superior court granted a section 995 motion and dismissed the information because of the magistrate's failure to conduct an in camera hearing. The Court of Appeal affirmed. (*Id.*, at p. 8.) The Supreme Court reversed.

The Supreme Court began with a discussion of the relationship between *Franks, Rivas*, and article I, section 28, subdivision (d), of the California Constitution (part of Prop. 8). Resolving conflict among Court of Appeal decisions, the court held that California and not federal law governs criminal discovery. (*People* v. *Luttenberger, supra*, 50 Cal.3d at pp. 9-17.) The court then decided what the California law governing criminal discovery would be.

Speaking for the court, Chief Justice Lucas reiterated earlier statements that a criminal defendant's right to discovery is based on the fundamental proposition that the accused is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information. (*People* v. *Luttenberger, supra*, 50 Cal.3d at p. 17.) "Permitting a defendant limited but reasonable access to information relevant to evaluating the validity of a search warrant appears consistent with this basic principle. [Citation.]" (*Ibid.*) In fashioning a "limited but reasonable" rule, the court turned to *Franks* and *Rivas*, found that their rules did not conflict, and drew from both.

First, the Supreme Court rejected the People's suggestion that it should impose on the discovery process the *Franks* standard, formulated by the United States Supreme Court for the purpose of establishing a defendant's right to an evidentiary hearing on the veracity of a search warrant affidavit.[8] (*People* v. *Luttenberger, supra*, 50 Cal.3d at p. 17.) The court explained that

[7] *Luttenberger* characterized the *Rivas* holding as that "a criminal defendant was entitled to discovery of police records and other documents concerning the background of a confidential informant on whose information a search warrant was issued, provided the documents were first screened by the court in camera to protect the informant's confidentiality." (*People* v. *Luttenberger, supra*, 50 Cal.3d at p. 7.)

[8] The *Franks* standard: "Balancing the competing considerations, . . . a defendant is constitutionally entitled to a postsearch evidentiary hearing on the veracity of the warrant affidavit, but only after he [or she] first makes a 'substantial preliminary showing' that (1) the affidavit included a false statement made 'knowingly and intentionally, or with reckless disregard for the truth,' and (2) 'the allegedly false statement is necessary to the finding of probable cause.' [Citation.] Exclusion of evidence seized under the warrant is required if (1) at the evidentiary hearing 'the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence,' and (2) 'with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause.' [Citation.]" (*People* v. *Luttenberger, supra*, 50 Cal.3d at p. 10, quoting *Franks, supra*, 438 U.S. at pp. 155-156 [57 L.Ed.2d at p. 672].)

one of the purposes of the *Franks* requirement of a substantial preliminary showing is to avoid misuse of evidentiary hearings for discovery purposes. "But it should not be applied to preclude all meaningful opportunity for a defendant to challenge a warrant on veracity grounds." (*Luttenberger, supra,* at p. 17.) *Franks,* the court pointed out, did not involve a confidential informant, and therefore the *Franks* decision did not address how a defendant is to gather information for a preliminary showing of material misrepresentation where there is a confidential informant. A defendant would be seriously handicapped in attempting to obtain an evidentiary hearing if he or she is denied access to information about the informant. "We do not believe that by its formulation of the preliminary showing, the *Franks* court intended effectively to bar challenges to warrant affidavits based on confidential informants' tips." (*Luttenberger, supra,* at p. 18.)

The court looked with approval to the approach taken to this problem by the Illinois Supreme Court in *People* v. *Lucente* (1987) 116 Ill.2d 133 [506 N.E.2d 1269]. In *Lucente* the court rejected the state's argument that the preliminary showing must negate the possibility that the informant lied to the officer. Rather, the Illinois high court directed that an evidentiary hearing should be held based, in the case before it, on a defendant's preliminary showing of alibi which pointed to some inaccuracy in the affidavit but did not establish that the inaccuracy originated in misstatements by the affiant. " 'If such a preliminary showing were demanded, no hearing could ever result in cases in which all the information to establish probable cause came from an unnamed informant. One need not be overly cynical to realize that such a rule would enable the police to insulate perjury from discovery by the simple expedient of a fabricated informant and thereafter "remain confident that the ploy was worthwhile." [Citation.]' [Citations.]" (*People* v. *Luttenberger, supra,* 50 Cal.3d at p. 18, quoting *Franks* and *Lucente.*)

Therefore, the *Luttenberger* court concluded that the in camera review and discovery procedure approved in *Rivas* does not conflict with *Franks,* but complements and implements it. The court then analyzed and refined that procedure. The court first approved the use of in camera screening as an effective tool to "protect the government's confidentiality interests while safeguarding the defendant's rights and the integrity of the warrant issuing process. (See 1 LaFave [Search and Seizure] (2d ed. 1987) § 3.3(g), pp. 709-711.)" (*People* v. *Luttenberger, supra,* 50 Cal.3d at p. 19.) The court characterized the state's interest in protecting the informant's identity as "strong and legitimate," and the defendant's constitutional right to attempt to controvert veracity of statements made in the affidavit as "limited but viable." These competing rights can be accommodated with *Rivas*-type in camera screening. (*Luttenberger, supra,* at p. 19.)

The *Luttenberger* court reviewed decisions from several jurisdictions where in camera screening procedures often involve calling the affiant or the informant for questioning by the court. The court noted that the *Rivas* procedure calls for in camera examination only of documents which defendant seeks, thereby possibly imposing a lesser burden on trial courts. (*People* v. *Luttenberger, supra*, 50 Cal.3d at p. 20; cf. *Swanson* v. *Superior Court, supra*, 211 Cal.App.3d 332.)

The court disagreed with *Rivas*, however, in its requiring only a conclusory assertion of the need for discovery. Giving a defendant the right to in camera inspection and discovery of police records based on such an unsupported request would "impose an unjustifiable burden on our trial courts and an unwarranted invasion of police files." (*People* v. *Luttenberger, supra*, 50 Cal.3d at p. 20.) Therefore, the court held that some preliminary showing is required beyond the mere desire for information. The defendant's motion must describe the desired information with " 'some degree of specificity' " so as to preclude the possibility that defendant is engaging in a " ' "fishing expedition." ' " Furthermore, even if the defendant shows good cause, the right to discovery is not absolute, because the court " '. . . retains wide discretion to protect against the disclosure of information which might unduly hamper the prosecution or violate some other legitimate governmental interest.' [Citation.]" (*Id.*, at p. 21.)

The court emphasized that "the warrant affidavit is *presumed* truthful," so that an in camera hearing will not be mandated "absent some showing that the presumptively valid warrant affidavit is questionable in some way." (*People* v. *Luttenberger, supra*, 50 Cal.3d at p. 21.) At the same time, the court recognized that it may be difficult for a defendant to prove police misrepresentations without discovery where the warrant is based on statements of an unidentified informant. Therefore, the court adopted a preliminary showing requirement less demanding than the *Franks* test and emphasized that whether to convene an in camera examination or to order discovery will remain within the trial court's discretion. (*Luttenberger, supra*, at p. 21.)

The court stated that this discretion should be guided by the following principles. The defendant must offer evidence casting "some reasonable doubt on the veracity of material statements made by the affiant. [Citation.]" (*People* v. *Luttenberger, supra*, 50 Cal.3d at pp. 21-22.) In particular, the defendant "must raise some reasonable doubt regarding either the existence of the informant or the truthfulness of the affiant's report concerning the informant's prior reliability or the information he [or she] furnished. [Citations.]" (*Id.*, at p. 22.)

In order to succeed, a defense motion should include affidavits supporting its assertions and, if possible, should specify the information sought, the basis of the belief that it exists, and the purpose for which it is sought. Even though the use of a confidential informant may hinder the defendant in providing specifics, a conclusionary statement that the information is needed will not suffice to obtain an in camera hearing. For example, the defendant can make factual allegations contradicting statements in the affidavit or can raise inconsistencies on the face of the affidavit. (*People* v. *Luttenberger, supra*, 50 Cal.3d at pp. 22-23.)

The defendant need not show that the alleged inaccuracies were the result of bad faith on the part of the affiant, but the defendant must "raise a substantial possibility that the allegedly untrue statements were material to the probable cause determination . . . ," using the totality of the circumstances test of *Illinois* v. *Gates, supra*, 462 U.S. 213. Materiality depends on how vital the information was to a probable cause determination. The more the affidavit contains detailed corroborative facts, the less material an inaccuracy will become. (*People* v. *Luttenberger, supra*, 50 Cal.3d at p. 23.)

Once the trial court exercises its discretion guided by these principles and determines that the requisite preliminary showing has been made, one of two results will follow. If the court determines in its in camera examination that the defendant's allegations are not supported by the police records, the court should simply report this conclusion to the defendant. On the other hand, if the information in the documents specified by the defendant tends to contradict material representations in the affidavit or constitutes material omissions from it, the court should order disclosure of the documents to the defendant, very carefully excising "all information that could reveal the informant's identity . . . ," but preserving the excised portions for appellate review. (*People* v. *Luttenberger, supra*, 50 Cal.3d at p. 24.)

### Applicability of Luttenberger

Although the *Luttenberger* decision did not deal with a "sealed" affidavit per se, the facts of that case and the facts of the case at bench both gave rise to the necessity of resolving essentially the same set of conflicting interests. In fact, appellant's counsel squarely and repeatedly raised the *Luttenberger* issue below. First, he made a motion before the magistrate who issued the warrant to unseal the affidavit. He argued that the portions of the affidavit which provide probable cause should not be sealed and that otherwise "the due process right of the defendant, under *Franks* v. *Delaware,* to attack misstatements or omissions in the warrant, those are now gone if this procedure is allowed to prevail." The court and both counsel then explored the conflict between the defendant's right to test the validity of the warrant

and the state's interest in protecting informants. Ultimately the magistrate ruled that in this case disclosure of the affidavit would necessarily reveal the identity of the informant and that therefore disclosure would be denied.

Defense counsel renewed the issue in his section 995 motion, arguing that sealing of the affidavit deprived him of his rights under *Franks.* After argument at the hearing, the court took the motion under submission, read the sealed affidavit in camera, and denied the motion without a statement of reasons.

Appellant raised the issue a third time in a section 1538.5 motion in which he argued that the warrant had issued without probable cause. Counsel's argument stressed a different point. The court denied the suppression motion, which it called "a motion to disclose more than anything else." Appellant's change of plea followed.

*Luttenberger* held that a defendant who has direct access to a complete search warrant affidavit and who can use the knowledge obtained from reading it to raise a reasonable doubt about its veracity has the right to discovery of information which may help mount an attack on that affidavit and warrant. (*People* v. *Luttenberger, supra,* 50 Cal.3d at pp. 6-25.) *Flannery* and *Swanson* held that an affidavit may be sealed to the extent necessary to protect the public interest in the confidentiality of the informant's identity. (*Swanson* v. *Superior Court, supra,* 211 Cal.App.3d at p. 339; *People* v. *Flannery, supra,* 164 Cal.App.3d at pp. 1115-1121.) It follows from the latter rule that a sealing of virtually all of an affidavit, as occurred in the case at bench, is permissible if the necessity requirement is met. The question of how much may be sealed simply is one of degree.

It cannot be the case, however, that the rule of *Flannery* and *Swanson* abrogates the rights so carefully delineated by the Supreme Court in *Luttenberger,* in which the court repeatedly stressed the need to protect defendants from the possibilities of perjury and fabricated informants. (*People* v. *Luttenberger, supra,* 50 Cal.3d at p. 18.) In fact, as defense counsel urged below, the protections later secured in *Luttenberger* are particularly critical where a portion, or all, of the affidavit is sealed. If defendants' *Luttenberger* rights were not carefully preserved in cases such as this, the *Luttenberger* holding could be eviscerated by the simple expedient of sealing all or part of the affidavit in support of the warrant in every case.

Therefore, we hold that where, as here, a portion or all of the affidavit in support of a warrant is sealed so that, even if the requisite facts exist, applying the guidelines set out in *People* v. *Luttenberger, supra,* 50 Cal.3d at pages 21-24, a defendant cannot reasonably be expected to make

the preliminary showing required by that decision, the magistrate and the trial court, upon a motion by the defense, must first determine if the affidavit is properly sealed, and if it is, they must then treat the matter as if defendant has made the preliminary showing and must hold an in camera examination as required by *Luttenberger.* Because in sealed affidavit cases such as the one before us the defendant may be completely ignorant of all critical portions of the affidavit, the defense will be unable to specify what materials the court should review in camera. The court, therefore, must take it upon itself both to examine the affidavit for possible inconsistencies and to inform the prosecution what materials or witnesses it requires. The materials will invariably include such items as relevant police reports and other information on the informant and the informant's reliability. (See *People* v. *Rivas, supra,* 170 Cal.App.3d at pp. 316-317.)

Because the defendant's access to the essence of the affidavit is curtailed or eliminated, the lower court may, in its discretion, find it necessary and appropriate to call and question the affiant and/or the informant, in accordance with section 1526, subdivision (a),[9] although this is not contemplated in the usual case where there is no sealing. (Cf. *People* v. *Luttenberger, supra,* 50 Cal.3d at p. 20; see *Swanson* v. *Superior Court, supra,* 211 Cal.App.3d at p. 336; *People* v. *Flannery, supra,* 164 Cal.App.3d at p. 1115.)

We are aware that the procedure mandated by our holding may be viewed as placing an additional burden on the trial courts. We can only observe that the burden necessarily follows from the use of sealed affidavits, which, though permissible, cannot in reason be allowed to eliminate the rights so recently and clearly set out by our Supreme Court in *Luttenberger.* We note that law enforcement officials have control over their own investigations. They may wish to avoid imposing the arguably burdensome procedure on the trial courts by managing their investigations in a way that reduces or eliminates the need for sealed affidavits.

Insofar as use of sealed affidavits is unavoidable, it is not unusual or inappropriate for the "burden" of protecting citizens' rights to fall upon our judiciary, and trial courts, as always, retain broad discretion in weighing the government's interests against defendants' rights.

Our examination of the record before us in light of the above controlling principles compels us to find that neither the magistrate at the time of issuance of the warrant nor the trial courts upon the section 995 and 1538.5 motions sufficiently tested the sealed affidavit in camera. Accordingly, the

---

[9] Section 1526, subdivision (a), provides in pertinent part: "The magistrate may, before issuing the warrant, examine on oath the person seeking the warrant and any witnesses he [or she] may produce . . . ."

trial court erred in denying the section 1538.5 motion, and the judgment must be reversed.

### *Staleness*

■ Appellant claims that execution of the search warrant seven days after it was issued rendered the information untimely and the warrant invalid. We agree with the People that section 1534, subdivision (a), is controlling. It provides that if a search warrant is executed and returned within 10 days, it is deemed to have been timely executed, and no further showing of timeliness need be made. That is what occurred here, and appellant's arguments to the contrary are speculative and must be rejected.

### *Disposition*

The judgment is reversed, and appellant's guilty plea is vacated. The cause is remanded to the trial court with directions either to dismiss the action or to proceed in accordance with this opinion.

If the case proceeds, appellant shall be permitted to renew his section 1538.5 motion. The court shall then hold an in camera hearing to determine first whether the affidavit is properly sealed; if portions of it are not, the court should unseal them. Second, the court shall examine the affidavit for possible inconsistencies, inform the prosecution of what materials it requires (including police reports and other information on the informant, the intermediary, and on the reliability of each of them), and call for questioning, as the court deems necessary and appropriate, the affiant, the informant, the intermediary, and/or other witnesses. After this in camera proceeding, if the court determines that there is no basis for appellant's attacking the veracity of the affidavit, the court should report that conclusion to appellant and deny the motion. If, on the other hand, the information adduced in camera tends to contradict material representations in the affidavit or constitutes material omissions from it, the court should order disclosure of the documents to the defendant, carefully excising any information which might reveal the informant's identity but preserving the

excised portions for possible appellate review.[10] The section 1538.5 motion will then proceed to decision with the benefit of this additional evidence.

White, P. J., and Merrill, J., concurred.

---

[10]Because even apparently innocuous details may tend to reveal the informant's identity, the court should perform any necessary editing of the affidavit with the assistance of the district attorney, the affiant, or both. If the district attorney believes that the affidavit as finally edited will reveal the informant's identity, the People retain the option of having the criminal proceeding dismissed. (Evid. Code, § 1042; *People* v. *McShann, supra,* 50 Cal.2d at p. 808.)